## DONNELL vs. JONES ET AL.

1. In an action by partners in a mercantile firm to recover damages for the wrongful and vexatious suing out of an attachment against them, in consequence of which their credit was destroyed and their business broken up, the record of the attachment and proceedings thereon is proper evidence to be submitted to the jury.

2. In such action, proof of the loss of probable profits, consequent upon the seizure of the plaintiffs' goods under the attachment, although such loss does not furnish the *measure* of damages, is nevertheless proper to go to the jury to aid them in arriving at a correct conclusion as to the injury sustained.

3. Where a bill of exceptions admits of two constructions, that will be adopted, which is most favorable to the regularity of the judgment.

4. So, where it appears that proper charges were prayed for, and the bill of exceptions does not show that they were refused, it will be intended that they were given by the primary court.

5. Where the court gives an improper charge, but, before the jury retire, corrects it, and instructs them to disregard it, such charge furnishes no ground for the reversal of the judgment.

6. Under a declaration, which avers the wrongful and vexatious suing out of an attachment and the seizure of the goods of the plaintiffs, whereby they have lost the advantage and benefit of their business as merchants, been forced to abandon the same, and been " wholly ruined in their circumstances," &c., the plaintiffs may recover the actual injury done to the goods by their seizure under the attachment.

7. In an action for wrongfully and vexatiously suing out an ancillary attachment, a fraudulent assignment, made by the debtor three days afterwards, cannot justify the defendant, unless the fraudulent intent on the part of the debtor existed at the time the attachment issued.

Error to the Circuit Court of Autauga. Tried before the Hon. John D. Phelan.

THIS was an action on the case by the defendants against the plaintiff in error to recover damages for the wrongful and vexatious suing out of an ancillary attachment. The plaintiffs proved on the trial that on and before the 1st day of January 1845, they were partners and merchants in the city of Montgomery and were in good credit, both in said city and in the city of New York, where they had been in the habit of purchasing their goods; that on the said 1st day of January the defendant sued out a writ against them returnable to the spring term 1845, of the Circuit Court of Montgomery county, to recover the amount due by them on two promissory notes, and afterwards on the same day and on the same demands sued out an ancillary attachment, which was levied on their goods. The plaintiffs then offered in evidence a transcript of the writ of attachment and proceedings thereon, to which the defendant objected on the ground that under the pleadings the testimony was irrelevant, but the court overruled the objection and the evidence was allowed to go to the jury. In connection with this the plaintiffs read in evidence a statement, which by consent was to be received as testimony, made by Hughes & Brame, deputies of the principal sheriff, showing the levy and seizure by them of the plaintiff's goods under the attachment, and their acts in respect thereto. The plaintiffs proved that before the issuance of the attachment they were in good credit in Montgomery and New York, did a large business, and had a good run of customers; that their stock of goods on hand at the time of the levy was worth about twenty-six thousand dollars; and that by the levy of the attachment their credit was destroyed and their business entirely broken up. They then offered to prove by Wm. B. Bell and Cyrus Phillips that the profits made on goods sold in Montgomery about the 1st of January 1845, was from fifty to sixty per cent. To this evidence the defendant objected, but the court overruled the objection and permitted the testimony to be given to the jury. The defendant showed that on the 3d day of January 1845, the plaintiffs made a general assignment and in connection therewith proved some circumstances, tending to cast a suspicion on its fairness. The court in respect to

the damages charged the jury in substance, that if the circumstances satisfied them that the act of the defendant in suing out the attachment was wrongful merely and not malicious, the plaintiffs were entitled to recover such damages as were the natural and direct effect of the suing out and levy of the attachment—such as loss of credit, stoppage of business, injury to goods, and to the extent of the actual injury done, and no more; and the court proceeded to illustrate by example the mode by which the jury should estimate the value of credit. The defendant excepted to the charge of the court, whereupon the court, at the suggestion of the plaintiffs' counsel, withdrew from the jury, before they retired, and instructed them to disregard, that part of the charge, explaining and illustrating the mode in which they should arrive at the value of credit, and to this action of the court the defendant also excepted. A number of charges were asked by the defendant, but with the exception of three or four, the record no where shows whether they were given or refused. The only one asked, which does not involve the same question embraced by the objections to the evidence or the affirmative charge of the court, is the 9th, and which is in the following words: "If the jury believe the assignment was fraudulent, then they should find for the defendant," which charge the court gave with the addition, "if the fraudulent intent existed at the time of the issuance and levy of the attachment." The rulings of the court are now assigned as error.

BELSER & HARRIS, and ELMORE & YANCEY, for plaintiff:

1. The declaration is for general damage to "credit and reputation" of plaintiffs, as a firm, and loss of "use, benefit and advantage of their business, and forced to abandon it." It contains no averment of special damage.—Donnell v. Jones et al. 13 Ala. 509.

2. Injury done to the goods of plaintiffs could form no criterion of damage in this case, as none such is avered in the declaration; and such is not the natural and proximate result of the issuance and levy of the attachment.—1 Chitty Plead. 396-399; 2 Greenl. on Ev. §§ 250, 89, 254, 420; Sedgwick on Dam. 77-8; Seborn v. Lively, 1 Gallison, 314-325; Blanchard v. Ely, 21 Wendell, 342; Deyo v. Waggoner, 19 Johns. 241; Loftin v. Williams, 16 Pickering, 64.

3. Proof of average profits on goods sold by other merch-ants, not evidence by which to estimate damages in this case—1st, because such would be a special damage, and none such is avered in declaration : 2d, because not evidence to prove pro-fits made by plaintiffs.—Donnell v. Jones et al. 13 Ala. 513-509; 2 Chitty Plead. 641.

4. If the attachment was only sued out wrongfully, and there was no proof of actual injury sustained, either to credit and repu-tation or to business of the plaintiffs, then they were entitled but to nominal damages.—Sedgwick on Dam. 53-57-8.

5. If the plaintiffs were insolvent before the issuance and levy of the attachment, they were not entitled to credit; and hence no damage could be done to their credit or business.

6. If the assignment made by plaintiffs was fraudulent, plain-tiffs were not entitled to nominal damages. The qualification given by the court, that this was true only, if the intent to exe-cute the assignment existed at the date of the affidavit, was im-properly given.

7. The damages must be wholly attributable to the act com-plained of.—1 Starkie on Slander, 205; 2 ib. Evidence, 466-64. The loss of profits, therefore, cannot be recovered in this action, as the assignment was in part the cause. Sales were uninter-rupted till the assignment. General damages are such as the law implies. Special damages are such legal and natural con-sequences, as the law does not necessarily imply.—1 Chitty Plead. 395. The law will not give damage for an injury to that, which one is in wrongful possession of.—1 Smith's Lead. Cases, 302-4; Ashley v. Harrison, 1 Esp. Rep. 48 ; Armstrong v. Remy, 5 Wend.

THORINGTON, for the defendants.

CHILTON, J.—The principal points which arise in this case, we conceive are fully settled by the previous decision of it to be found in 13 Ala. 490. We there attempted to show the distinction between general and special damage, and to point out the damage which, under the declaration in this case, constitu-ted the particular subject of inquiry and compensation. We there held that it was competent for the plaintiffs to prove the general loss of their mercantile credit, the stoppage of their joint

Donnell v. Jones et al.

business, and the prevention of their sales. These we considered and still regard the natural and proximate results of the acts complained of, and they are avered in the declaration in aggravation of the damage, consequent upon the wrongful and vexatious suing out of the attachment, upon the ground that the plaintiffs below were about fraudulently disposing of their property, and the levy and seizure of their goods. Guided by the principles then laid down, it is perfectly clear that the Circuit Court properly permitted the plaintiffs below to prove the issuance of the attachment, the levy made under it upon the goods of the firm, and the subsequent disposition of the levy, as is shown in the written statement as to what the witnesses Hughes and Brame would prove, which by consent of the respective counsel was substituted in lieu of their examination in court. This proof conforms to the allegations of the declaration, and tends to prove the actual damage the plaintiffs sustained.

The plaintiffs allege that by reason of the wrongful issuance of the attachment and seizure of their goods they were forced to give up their business as merchants in the city of Montgomery, and that this, with the loss of their credit and the expense of defending against the attachment, has injured them to the amount of twenty thousand dollars. How shall the jury arrive at a knowledge of their actual loss? What have they lost as a conquence of the seizure of their goods and stoppage of their business. The answer plainly is the nett profit which they would have made upon their goods but for the wrongful act of the plaintiff in error. But it is insisted by the counsel for the plaintiff in error, that the loss of profits is not the subject of compensation, and we are referred to Sedgwick on Damages, p. 78, who says, "that both the English and American courts have generally adhered to this denial of profits as any part of the damages to be compensated, and that whether in cases of contract or of tort." The author cites 1 Gall. Rep. 314; 1 How. U. S. Rep. 28. In the first, Judge Story rejected the item of profits on a voyage in an action for an illegal capture, and in the latter, the Supreme Court of the United States, per Taney, C. J. held, in a case of collision between two vessels, that the owner of the injured vessel could not recover for profits on the voyage broken up by the accident. These cases are predicated upon the doctrine which obtains in cases of insurance, which is, that the in-

sured cannot recover for the loss of probable profits at the port of destination, and that the value of the goods at the place of shipment constitutes the true criterion of damages. Without venturing to question the correctness of these decisions, we think the principle settled by them does not apply to the facts of the case before us. Here, unless the plaintiffs can be allowed to show the character of the business in which they were engaged, and the ordinary profits accruing upon such business, what aid shall the jury have in estimating the damage they have sustained? Now we would by no means say the jury should make the supposed profits, which they had lost, *the measure of damages.* All we design to affirm is that proof, tending to establish such loss as a consequence of the levy of the attachment, may properly go before the jury to serve as some guide for them, in the exercise of their discretion, in estimating the loss. The cases cited by Mr. Sedgwick, p. 90, *et seq.* we think, sustain this view. In White v. Moseley, 8 Pick. R. 356, which was an action of trespass for breaking down a mill dam, the diminution of the plaintiff's profits on account of the interruption of the mill was allowed to be recovered. A similar principle was ruled by the Supreme Court of Vermont in Clifford v. Richardson, 18 Ver. R. 620. The court say, "the loss of the use of the mill whether wholly or partially &c, are within the direct allegation of damage and injury contained in the count, and cannot be regarded as a remote or collateral damage for which there is no remedy." In Tarleton v. McGawley, Peake, N. P. Cases 205, Lord Kenyon even went so far as to hold that an action lay for firing on the negroes on the coast of Africa, thereby deterring them from trading with the plaintiff, whereby he lost the profits of their trade; and this case is cited with approbation by Mr. Sedgwick, p. 90, who says, it may well be doubted whether the language of some of the American cases has not pushed the rule beyond the true line. The case of Ingram v. Lawson, 6 Bing. N. C. 212, cited by Mr. Sedgwick, p. 91, fully sustains the view we have taken. That was an action against the editor of the Times, for having published a libel, stating that a certain vessel, of which the plaintiff was master and owner, was not seaworthy &c. The jury were instructed that with a view to estimating the damages, they might look to the nature of his business and his general rate of profit. This was held to be correct. Coltman, J. said "with

respect to the damages, the jury must have some mode of estimating them, and they would not be in a condition to do so, unless they knew something of the plaintiff's business, and the general return from his voyages." The evidence, says Mr. Sedgwick, was admitted not as a measure of damages but as a guide for the jury in exercising their discretion.—see, also, 23 Wend. 425; 9 ib. 325; 18 Pick. R. 78; 17 Wend. 71. When this case was previously before us, we said that injury to the joint credit of the plaintiffs, injury to their goods, the stoppage of their business, and the prevention of their sales, were proper subjects of inquiry for the jury, and constituted legitimate sources of damage.— 13 Ala. 509. Under that decision, and the cases above referred to, we think the proof of Phillips and Bell was properly received, not as affording a measure of damage, but as furnishing to the jury, who must in the absence of all proof of the kind remain in utter darkness as to the damage sustained, *some* light on the subject, guiding them at least to some extent in forming a correct idea of the injury sustained. The position that such proof tends to establish injury, not specified in the declaration, cannot be sustained. This was settled by us in the former decision, and we are, upon a re-examination of the case, better than ever convinced of the correctness of that opinion.

In regard to the bill of exceptions, and what is shown by it, we have but to say that we have time and again held, the party complaining of error must affirmatively show it; that when we are called upon to construe a doubtful bill of exceptions, that construction will be adopted which is most favorable to the regularity of the judgment; in other words, when intendments are to be made, they will be against the party excepting, and in favor of the judgment. This being too well settled to be controverted, we are bound to consider those charges stated in the bill of exceptions, and which do not appear to have been refused, as given by the court. The court also had the right, either on the motion of the counsel or *mere motu*, to correct or modify a charge which he had given to the jury, and it would be highly mischievous in its consequences, if such right did not exist. It cannot be tolerated that a casual or unguarded expression falling from the court, and which upon a moment's reflection the court sees is wrong, and corrects before the jury, should operate a reversal of the cause. We must intend that the jury were not in-

fluenced by the erroneous charge which the court afterwards tells them in plain and direct terms to disregard. We think also, that the actual injury done the goods of the plaintiff by the levy upon and seizure of them, may well be recovered under this declaration.

We have fully considered the other points raised in the argument of this case, but as they are, in our opinion, concluded by what we have said in this, and the previous opinion, pronounced in this cause, we should be but repeating what we have before said to notice them particularly in this place.

As to the effect of the assignment made by R. Jones & Co., three days after the issuance of the attachment, the court very properly held that even its fraudulent execution could not justify the suing out of the attachment three days previous to its execution, unless the intent existed at the time the attachment was sued out. Clearly, if at the time the attachment was sued out, no good cause existed for a resort to such extraordinary process, the issuance of it was wrongful. If a ground for an attachment is shown to exist a few days after its issuance, this may afford some evidence that the party contemplated it at the time, but this is not the effect of the charge asked upon the subject.

Upon a careful review of the whole case, we feel satisfied that there is no error in the record, prejudicial to the plaintiff in error, and that the charges given were as favorable, and some of them perhaps more so, to the plaintiff in error, than the law would justify. Let the judgment be affirmed.