LUTHER BAKER & SONS *vs.* F. M. SHERMAN, O. C. MILLER, and L. C. LEAVENS.

January Term, 1899.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, THOMPSON and WATSON, JJ.

Opinion filed May 8, 1899.

*Expert Evidence.*—The age of marks or spottings upon trees is a subject for expert evidence.

*Age of a Tree Shown by Its Rings.*—The court finds no reason to doubt the long-accepted theory that the years of a tree can be approximately determined by counting the concentric layers in its grain.

*Woodsmen and Surveyors as Experts.*—Such experience and familiarity with matters of this kind as is had by woodsmen and surveyors, constitute peculiar knowledge, and give special skill in determining the age of trees, and such, especially if they have been accustomed to examine with the glass, may testify as experts.

*An Exception Implies a Ruling.*—When exceptions are allowed to remarks of counsel they are to be treated as implied rulings that the remarks are proper.

*Remarks of Counsel Disapproved.*—Counsel should refrain from remarks during the examination of witnesses, putting the question directly and receiving the answer without comment; but the infractions of this rule shown by the record are not such as to call for a reversal of the judgment.

*Opinion Evidence.*—The question being the value of a tract of timber land, a witness who has looked out a route for a logging road, and estimated the cost per thousand of removing the lumber and building the road, and who has testified upon these subjects, may add his opinion as to the feasibility of making the road for the quantity of timber claimed to be standing upon the tract.

*Question without Offer.*—It is not error to exclude a question unaccompanied by an offer.

*Question Improper in Form.*—A question was properly excluded as implying a fact not yet shown.

*Competency a Question for Trial Court.*—The competency of witnesses to speak upon a given subject is a question exclusively for the trial court.

*Competency and Weight Distinguished.*—The distinction between the competency and the weight of testimony.

*Conduct as Evidence of Belief.*—One question being whether the defendants, if they made the representations as to the boundary, knew them to be false, it was proper for them to show that they and the adjoining proprietors had always treated the line as being where they told the plaintiffs it was, and that they believed it to be so.

*What Is Rebuttal.*—The measure of damages was the difference between the value of the lands if they had been located as represented and their value as located in fact. In the opening, the plaintiffs' witnesses testified that this difference was a certain sum, but did not estimate the value of the stumpage. The defendants' witnesses based their valuation of the land upon the stumpage per acre. In rebuttal, the plaintiffs should have been permitted to show that the amount of stumpage per acre was such as to make the estimate of the defendants' witnesses too low.

*Cross-examination Postponed.*—The plaintiffs' legal right was not infringed by the postponement of their opportunity to cross-examine.

*Cross-examination Restricted.*—A surveyor who does not testify in chief that the corner at which he began his survey is an original corner, cannot be cross-examined upon that subject as matter of right.

*Theory and Fact.*—A surveyor may know where a theoretical line should strike, but he cannot testify where it would, unless he has run it.

*Memoranda as Confirmatory Evidence.*—Private contemporaneous memoranda and letters written by the witness, by which his recollection is refreshed, are admissible in aid and confirmation of his testimony.

*Res ipsa loquitur.*—Counsel have no right to ask a witness what a paper shows, when the paper is in the case and speaks for itself.

*Contradicting a Witness.*—A witness who vouches a document or book in support of his statement may be contradicted by the production of the same.

*Document in Connection with Testimony.*—A deed referred to by a witness on cross-examination was properly admitted in re-examination as explanatory of his testimony.

*Elements of Value—Cross-examination.*—To show the value of the land it was not error to permit the defendants to prove what it would cost to deliver the timber at a certain market. But it was not cross-examination to ask the same witness what it would cost to deliver it at another place.

*Construction of Deed—Law and Fact.*—The court cannot hold as matter of law that a deed conveying certain lots by number includes all the land within a mountain crest, merely because the deed contains a stipulation that the grantee shall cut the timber clear to the crest.

*Law and Fact.*—It cannot be said as matter of law that the defendants were bound to inform the plaintiffs that the boundary line had been disputed, if they honestly believed that it was where they represented it to be, for the dispute might be nothing worthy of mention.

*Trial Court May Express Opinion as to Weight of Testimony.*—The trial court has a right to express its opinion as to the relative weight of evidence, and in the present instance the caution was eminently proper.

*Affidavits of Jurors Inadmissible to Impeach Verdict.*—Affidavits of jurors are inadmissible to show that they misunderstood the charge.

CASE. Plea, general issue. Trial by jury, September term, 1897, Franklin county, *Start*, J., presiding. Verdict and judgment for the defendant. The plaintiffs excepted.

The first count of the declaration alleged that the defendants sold to the plaintiffs all their, the defendants', interest in a tract of timber land by knowingly, falsely and fraudulently representing that it was bounded by Canada line on the north, and by the crest of a mountain range on the east, west and south, whereas a portion of the tract deeded lay beyond the crest, and a portion of the tract within the crest was not included in the deed; wherefore the tract was much less valuable, and the plaintiffs were damaged.

The second count alleged that the defendants sold to the

plaintiffs all their, the defendants', interest in that part of lot 4, range 6, of the town of Jay lying west of a mountain crest, by knowingly, falsely and fraudulently representing that such part contained fifty-five acres, whereas it contained only twenty-three acres.

Upon trial, the principal contentions were three. The first related to the representations; the second to the actual boundaries of the tract conveyed; and the third to the value of the land as bearing on the question of damages.

In the following statement, the exceptions are dealt with separately and numbered as in the opinion.

(1) Dewart was a witness for the plaintiff. Before the excluded question was put to him, he had testified that he was a graduate of Harvard University and the Lawrence Scientific School, had taught surveying and trigonometry for fourteen years, and had been a practical operating surveyor since 1880. He produced and identified certain blocks showing the spottings on the double birches and on other marked trees on or near the lines in question, and was then asked if he could tell from those blocks the age of the marking. He replied, "I can tell some things. I can't tell the precise age." He was next asked if he had examined them for that purpose, and answered, "Yes." He was then asked, "How long, in your opinion, had those marks been on the double birch trees?" Defendants' counsel objected, that the witness had said he could not tell. The court ruled, "We will exclude the question in view of what has been said;" and plaintiffs' counsel excepted. The witness was then further asked if he could tell the probable age or time from the marking, and answered that he could. He was asked to do so; but the question was excluded and the plaintiffs excepted.

Before these questions were asked and this ruling made, the witness had not testified that he had ever counted or attempted to count the rings upon a tree, or that he had any knowledge how to determine the age or marks upon

trees,—or that he knew of any method by which the age of a mark upon a tree could be determined; and no evidence had been offered tending to show that the witness had any skill in this particular. But afterwards the same witness testified that he had used a magnifying glass every week day for ten or fifteen years and that he had examined and counted rings on wood to determine the age. The offer was not renewed.

(10) (11) (12) (13) (37) The defendants were allowed to show that while they were the owners of the lands in question, the adjoining owners had cut the timber to the line which the defendants were now claiming as the true line, and beyond the line which the plaintiffs were now claiming as the true one, and that the defendants had acquiesced in such cutting believing it to be according to the lines of ownership.

(14) (15) (38) The defendants were permitted to show that before the sale to the plaintiffs they had employed a surveyor to divide lot 4 in range 6, for the purpose of a contract which they had with one Bowen, and what the surveyor did and what he reported to them that he had done in respect to that business, as bearing on the good faith of their representations to the plaintiffs touching the division of said lot and their ownership of fifty-five acres therein.

(16) In the opening, the plaintiffs' witnesses testified to the difference in value between the land as it was actually located and as it had been represented by the defendants to be located,—that is, to the difference in value between the land without the crest and the land within the crest, and most of their witnesses stated that the difference was fourteen dollars per acre, and that the land without the crest was worthless.

(28) The plaintiffs' witness Dewart had testified that in regard to a certain corner he had a clue in the statement of the field book of the town that it was a birch tree. The

defense called Dewart and handed him the field book, and was permitted to show by him that its description of that corner was not as he had stated.

(29) Defendant Leavens had testified to his ignorance of the location and boundaries of the land in question. On cross-examination he admitted that he had in his possession, as guardian, a deed of the land running to his ward's father and was asked to produce it before the trial should close. He did so, but the plaintiffs did not offer it in evidence. Thereupon the defendants were permitted to read it to the jury in connection with his testimony. The deed described the property only by reference to former conveyances.

(34) North Troy was shown to be one of the natural markets for lumber in that vicinity.

Requests 1, 2, and 3. The deeds contained a stipulation that the plaintiffs, in cutting timber from the land conveyed, were to begin on Canada line and cut a strip wide enough for a year's operation, and cut the timber on such strip clear to the crest of the mountain.

*Ballard & Burleson, Wilson & Hall* and *G. F. Ladd* for the plaintiffs.

*John Young* and *H. E. Rustedt* for the defendants.

TAFT, C. J. *Points of Evidence* I. Exc. 1. Whether the southwest corner of lot 4, range 6, was at the double birch trees or thirty-one rods southerly, was a material question, and the marks upon the birches were relied upon to show whether they were of ancient or recent make. The trees had been marked at all points of the compass. The witness Dewart had taken blocks therefrom, and was asked to tell the probable age of the marks; and his answers were excluded. He was permitted to tell the appearance of the marks,—whether old or freshly made,—but was not permitted to tell their probable age. It was a question of expert evidence. The witness said he had had experience

in examining and counting rings in wood to determine its age a great many times for ten years, had used a magnifying glass every week for ten or fifteen years and could tell the probable age or the time when marked. It is argued that the age of a tree cannot be told by counting the rings in its grain and the case of *Patterson* v. *McCausland*, 3 Bland's Ch. (Md.) 69, is cited. However ingenious and learned the reasoning of the court in that case may be, it fails to convince us that mankind has lived under an hallucination in that respect for centuries. Almost everyone acquainted with the subject treats it as true, that the age of a tree can be approximately told by counting the concentric layers in its grain, one of which, as a general rule, is made annually. Even the tree itself in "The Talking Oak" of the late Poet Laureate, Tennyson, voices the popular belief when it says,

"That though I circle in my grain
Five hundred rings of years."

It is further urged that the counting of rings in a block of wood is not the work of an expert, but that the jury, having the block before them, were as competent to determine the number of rings as any other person. We hold otherwise. Such experience and familiarity with matters of this kind as is had by woodsmen and surveyors, constitute peculiar knowledge and give a person special skill in determining the age of wood or trees; and if a person has special skill upon a subject he may be called as an expert. *Bemis* v. *C. V. Railroad*, 58 Vt. 636. An examination of paper with the aid of a microscope—a question similar to the one before us—was held the proper subject of expert evidence in *Bridgman* v. *Corey*, 62 Vt. 1.

The testimony was not excluded, for the reason that the court did not find him qualified to testify as an expert. The court said it was "in view of what has been said." There was nothing in what had been said that would justify its exclusion. It was clear he was qualified to speak as an expert. The objection made by counsel was, "It is not a matter of expert knowledge, we say." And it is so argued

in their brief. The only rational view to take of the matter is to treat the testimony as excluded upon the ground of the defendants' objection, viz.—as a matter of expert knowledge. In this there was error and the exception is sustained.

Exc. 2. The witness Webster was excluded as an expert for that the court found he was not qualified to speak as one.

Exc. 3, 17, 21, and 39, are waived.

II. Exc. 4, 5, and 6, point 2. The remarks of defendants' counsel during the examination of witnesses were uncalled for and unnecessary. No objection was made to either of them. None could have been made, as the opposing counsel could not anticipate them. Exceptions were taken to them as soon as they were made, and, from the fact that exceptions were allowed, we treat them as if there were implied rulings that the remarks were proper. In no other way can they be before us, for we only sit in error to revise the rulings, and the refusals to rule, of the court below. There was nothing in the remarks of the counsel that will justify us in reversing the judgment, nor that we must hold was error.

Remarks of a conversational character, during the examination of a witness, should be omitted. Counsel are quite apt to say to a witness, "I wish now to ask you this question." "If you don't care to answer that, I will ask another." And many other questions like them. The proper mode of examining a witness is to ask him questions, omitting remarks of all kinds and receive the answers without comment. There is no necessity of asking leave of a witness to question him, nor stating to him what you propose to ask him. The remarks of the counsel to the witness Judge Chamberlin, "I wish you would answer all you have to say and not have any mental reservations," fairly imply that the counsel thought the witness was not answering frankly, but the statement may have been as prejudicial to the counsel who made it as to the witness who was on the stand.

III. Exc. 6, point 1. The witness Chamberlin testified in cross-examination that he had looked out a route to take the timber east of the crest of the mountain, to a piling ground on the river, had estimated the cost per thousand of taking the lumber to the river, and the cost of making the road, and that there were additional expenses for a bridge and filling a ravine. The plaintiffs then asked him, assuming that there were 300,000 feet of timber east of the crest, if it would be feasible to make the road to get off that amount. The answer was excluded, and we hold improperly. Having a thorough knowledge of the land and the timber, the roads necessary to take off the timber, the ravines to be bridged or filled, the expense of cutting and drawing, he was in a better position to determine whether it was feasible, profitable, to make a road to take off what lumber there was on the land, than the jury would be, with nothing but the facts testified to, without the opinion of the witness. The objection made to this testimony is that the question called for the opinion of the witness, that the jury were just as competent to decide whether it would be profitable to make the road and take off the lumber as the witness. The general rule is that a witness must state fact, not opinion, but it is not universal, nor are the exceptions confined to experts in matters of science, art, or skill. When a witness has had the means of personal observation, and the facts and circumstances which lead the mind of the witness to a conclusion are incapable of being detailed and described so as to enable anyone but the observer himself to form an intelligent conclusion from them, the witness is allowed to add his opinion or the conclusion of his own mind. *Cavendish* v. *Troy*, 41 Vt. 99, and many cases cited in *State* v. *Marsh*, 70 Vt. 288.

The opinion of a person who had traversed the mountain sides, examined the routes for a wood road, the ravines to be crossed and the places to be bridged, and all the

circumstances connected with the matter must necessarily be of greater value than one formed by a juror from the testimony of witnesses detailing the facts only. It is a question somewhat like the ones of value, size, distance, etc., upon which a witness may always express an opinion, if he has sufficient acquaintance in the premises.

IV. Exc. 7. B. F. Place, a witness called by the plaintiffs, was asked, "What do you say as to the value of land seven years ago, and three years ago?" and the answer excluded. There are several reasons why the ruling was proper, but it is sufficient to say that what his answer would have been is not shown, and there was no offer to show any fact by him. It does not appear therefore, that the plaintiffs were harmed. The testimony is referred to and the record shows that no exception was taken to the exclusion of the answer.

V. Exc. 8. The plaintiffs bought lot 4 in range 6, excepting forty-five acres. As the lot was an hundred-acre lot, they should have obtained fifty-five acres and they claim that the defendants represented that lot 4 did contain that quantity of land, and the plaintiffs' testimony tended to show that but fifteen acres was in fact conveyed to them. The question was asked Homer Baker, "Had you any knowledge that more than forty-five acres had been sold off from lot 4 in range 6?" This question was excluded as inadmissible until there was some testimony in the case tending to show such sale. Homer Baker's belief that there were not fifty-five acres in the lot which was deeded to them was a material fact and any testimony tending to show it was legitimate. The defendants may not at the time have owned fifty-five acres in lot 4, although they might never have deeded away any part of it. The form in which the question was put, was objectionable. It carried with it the inference that more than forty-five acres had been sold and it does not appear there was any testimony in the case tending to show there had been.

VI. Exc. 9. This question is upon the subject of damages, is of a character which relates to the weight instead of the admissibility of testimony, and we do not sustain the exception. The testimony in question was that of C. P. Stevens, upon the subject of the value of the land. The objection made was, the witness had no knowledge of the kind, quality or value of the hard wood. He had dealt in hard wood, bought it, manufactured it, and saw the hard wood on the land in question, although not looking for it particularly. Whether he was competent to testify on the subject and also on the subject of the value of the Mooney place as a piling ground, were questions for the trial court, which we do not revise.

VII. Excs. 10, 11, 12, 13, and 37. The plaintiffs allege that the defendants represented to them that all the land sold, lay within the crest of the mountain, but that said representation was false, in that some lay beyond the crest, "as the defendants then and there well knew." In this aspect of the case, it being an action for fraud and deceit only, the defendants' knowledge of the falsity of their representation was a material fact and they could defend by showing that they believed their south line was on the mountain crest.

One question in dispute was whether they knew their representations were false. They could meet that issue by showing by the witnesses Bisbee, Bannister, Sherman and Miller, that they and the adjoining proprietors had always treated the crest line as the division line between them and the adjoining land owner, and that they in good faith believed it to be so.

The testimony under these several exceptions was properly admitted upon this question and therein was no error.

That it was admissible upon the other branch of the case, that is, that the defendants made representations as of their own knowledge, which they did not know to be true, is a question not before us and not considered.

VIII. Excs. 14, 15, 38. In the admission of the testimony noted in these points, the court was governed by the rule applied to the case as stated under the last point, viz.: were the representations false to the knowledge of the defendants, or, were they made as of the defendants' own knowledge? We find no departure from these two rules by the trial Judge, and the exceptions are not sustained.

IX. Exc. 16. The admissibility of the testimony of Ayer depends upon whether it was proper rebutting testimony. The plaintiffs gave no testimony in the opening to show the value of the stumpage on the land within the crest of the mountain. The defendants' witnesses testified, basing their estimate of the value of the land per acre upon the stumpage, and the plaintiffs' offer in rebuttal was to show the amount of stumpage per acre, for the purpose of showing that the value of the stumpage, at the estimate put upon it by the defendants' witnesses, would make the value of the land per acre much more than the estimates as made by the witnesses for the defendants. Testimony of this character was not given by the plaintiffs in the opening and would directly meet and rebut the testimony of the defendants. This testimony, therefore, in rebuttal, should have been admitted.

X. Exc. 18. Charles T. Hall was called by the defendants and testified in chief to statements made by one Chamberlin in the presence and hearing of Homer Baker. The plaintiffs insisted upon the right to then cross-examine the witness upon the point of whether Homer Baker could hear or not. This right was denied, but he was afterwards cross-examined fully upon that point. It does not appear that the point was made, that whether he could hear or not, was a question for the court to determine, in the first instance, and the plaintiffs were not harmed by the denial of their claimed right to cross-examine, a right which was fully exercised at a later stage of the trial.

This is the only point relied upon under Exc. 18, and is not sustained.

XI. Exc. 19. The witness Kingsbury was asked how much land was cut off from lot 4 range 6 by a line run across the lot, assuming the double birches to be the south-west corner. The objection was that he had given only one corner and the answer would depend upon the witness knowing both corners. The testimony tended to show that he had surveyed the other corner, the south-east one, and the court held the witness was competent, and that question we will not revise.

XII. Exc. 20. The defendants' witness Kingsbury, did not testify in chief upon the question of whether the corner at which he began his survey was an original corner or not. The plaintiffs, therefore, had no right to cross-examine him in respect to whether it was an original corner. There was no denial of their right, to show it was not an original corner.

XIII. Exc. 22. Two rulings under this exception present the same question. The witness Kingsbury testified that he ran a line from the double birches, westerly 77 degrees, 20 minutes, west, and hit certain monuments; and that the line so run by him would strike the original town line at a point between lots 4 and 5 in Jay. The plaintiffs offered to show by Mr. Chamberlin that such a line run on the course stated, would strike the original line at a point further to the north than the point between lots 4 and 6. The court ruled that the witness not having run the line, was not competent to testify upon the question.

This ruling was correct. No doubt the witness could tell where it ought to strike the Richford line, but where it in fact would—never having run it—is another question, upon which no amount of experience would qualify him to speak.

The other two questions under exception 22 were excluded as not in rebuttal. There is nothing in the record that shows the rulings were erroneous.

XIV. Exc. 23, 24, 40, and 3rd exc. to the charge. The defendant Leavens testified and refreshed his recollection by

the aid of a letter written by him near the date of the occurrence to which his testimony related. The letter related to the same subject. The plaintiffs · conceded that this was proper but objected to the use of the letter as confirmatory evidence and excepted to the charge of the court to the same effect. The law is too well settled in this State that such testimony is admissible and the charge of the court correct to be again brought under discussion. Private memoranda made by parties, and letters written concerning the subject matter, if contemporaneous, are regarded as auxiliatory to and confirmatory of the testimony of the witness.

XV. Exc. 25. There was no error in permitting the witness Sherman to state that he was notified by telegram, or by word from Mr. Miller, to meet the parties on the land in order to make an examination of it. It was a part of the arrangement by which they were to meet.

XVI. Exc. 26, 27. There was no error in the cross-examination of defendant Leavens. It was unnecessary for him to answer the question how the line, in the description of land in a deed, was described therein, the deed being then in the case as one of the exhibits. It was shown by the deed itself. *Res ipsa loquitur.* In regard to the other question he answered that the description of the line was shown by the deed, and the court ruled the question was essentially answered. The record does not show that the right of cross-examination was in any way abridged. What the plaintiffs required was already in the case and its repetition would give no added force to it.

XVII. Exc. 28. The original field book of the survey of the town of Jay was referred to by the witness Dewart. It was subsequently admitted for the purpose of contradicting him. In that there was no error.

XVIII. Exc. 29. After the examination of the defendant Leavens in regard to the knowledge he had of the land in question, its value and its boundaries, it was not error to

admit the deed in connection with his testimony. The jury could weigh his testimony better with than without it.

XIX. Exc. 30. The question asked of Mr. Leavens, how much the land had cost the estate at the time of the sale, was properly excluded as no part of the cross-examination. What the land had cost the Ewing estate was collateral to any issue on trial. If it had been a material issue, the plaintiffs could have called the witness and made the inquiry in the opening of their case.

XX. Exc. 31, 41. The questions asked of the witness Bowen in rebuttal were excluded as not proper rebuttal testimony. There was nothing disclosed by the record by which this court can say there was error in the ruling.

XXI. Exc. 32. This point is in substance considered under point VII.

XXII. Exc. 33. The plaintiffs' witness Bowen, in cross-examination, testified he told the surveyor, Kingsbury, that he, Bowen, understood the double birches marked one of the lot corners; that he supposed it was a corner where they stood, that he had no particular knowledge, but that it was the only corner he could ever find there.

It was not error in re-direct examination to exclude the question whether he had, or knew there was, doubt as to whether the double birches were the true corner or not. He had testified fully as to his knowledge,—said he had no particular knowledge upon the subject. It savored too much of refinement to examine him in respect to his doubts.

XXIII. Exc. 34. To show the value of the land as it was, it was not error to permit the defendants to show what it would cost to deliver the timber east of the crest of the mountains at North Troy. It was an element of the question in issue.

The question which the plaintiffs asked the witness, what it would cost to deliver it at another place, was no part of the cross-examination and its exclusion was not error.

XXIV. Exc. 35. The rule of damages as presented upon

trial was, "the difference in value between the land in question as represented, and as it actually was." The defendants, therefore, were properly permitted to show the value, and in connection with it, the average cut per acre of the land. This exception is overruled.

XXV. Exc. 36. The testimony of the witnesses Brown and Wood, called by defendants, was properly admitted. They made a count of the trees upon some parts of the lots and estimated the number on other parts. The objection is, that it, their knowledge, "was too vague and uncertain to be used as a basis for estimating the number of logs, or the number of logs it would take to make 1,000 feet of lumber."

No objection was made to their competency to speak upon such questions, but that their knowledge of the facts from which they spoke was too vague and uncertain. This went to the weight of their testimony, not its competency. If there was testimony before the trial court tending to show their competency, the ruling that they were competent will not be revised by this court.

XXVI. *Requests to charge.* Reqs. 1, 2, 3. The court was requested to charge that the deeds between the parties covered all the lands from the Canadian line to the crest of the mountain. The description in the deeds was by lot numbers, with no other description. Whether the lots conveyed embraced all the land from the line to the crest, was not a question of law, at least we cannot give the deeds the construction contended for. Whether in fact they did, would require the aid of extrinsic testimony and thus be a question for the jury, if it became material.

XXVII. Req. 4. No exception was taken to the refusal to comply with this request.

XXVIII. Reqs. 5, 6, 7. In regard to the 5th request, we construe it as relating simply to the matter of damages, in regard to lot 4 in range 7, and the rule which was asked for by the request was the general one stated by the court with reference to damages in the case, viz.: that the plaintiffs are

entitled to recover the difference in value of the land as represented and as in fact it was. The request was complied with.

Request 6 was properly denied. It was this: "That if the defendants honestly believed that the south line of lot 4 in range 7, was as their evidence tends to show, then if they knew it was in question or in dispute, and did not communicate that fact to the plaintiffs, but led them to believe that said lot was a full lot, it is no defense to this action." The gist of it was this, that "if they knew it was in question or in dispute" and did not communicate such fact to the plaintiffs, the plaintiffs would have a right to recover. The failure to communicate such fact to the plaintiffs would not bar the action but would be proper matter to consider upon the question whether the defendants had an honest belief upon that subject, whether their belief was in accordance with their representations when made. And the nature of the claim made would have an important bearing, for it might be a frivolous one, one that a prudent man would not consider for a moment. There was no legal obligation upon the defendants to communicate the fact to the plaintiffs, and that is the precise instruction called for by the request.

Request 7 presents the same question in regard to lot 4 in range 6, as has been considered under request 5.

XXIX. Reqs. 8, 9, 10. These requests relate solely to the right of recovery in case the plaintiffs knowingly made false representations. The charge upon this branch of the case was correct and in compliance with the requests.

*Exceptions to the charge.* Exc. 1. This was to the refusal to comply with the requests and has been considered.

Exc. 3. Has been considered under point XIV. in the evidence.

XXX. Exc. 4. The fourth exception to the charge is that the presiding judge did not comment on certain parts of the plaintiffs' testimony, particularly that of the witness

McGettrick and a cash book which was in evidence. The argument upon this point is that the court made the issue, to which the testimony related, prominent in the charge and pointed out minutely and in detail all the testimony tending to support Leavens, the defendants' witness, and utterly failed to point out the evidence in support of the plaintiffs' claim. Without considering if this be a just cause of exception or not, it is sufficient to say that the reason is not true in point of fact. There is no reference in the charge to any specific parts of the testimony on either side save to point out and instruct them that the letter (noted under point XIV. in the evidence) was not substantive testimony, but was in the case only as confirmatory of Leavens's testimony.

Exc. 5. This exception is not noticed in the plaintiffs' brief and is not considered.

Exc. 2, 6, 7 and 10. These points in relation to the charge we do not consider it beneficial to consider, as the judgment will be reversed on other grounds, and the same questions may not again arise.

XXXI. Exc. 8, 9. The 8th and 9th exceptions to the charge related to the subject of damages. The rule stated by the court was this: "The rule of damages in this case, if you come to the subject of damages, is the difference of what the land would have been worth had it been located and situated as represented and its value as it was in fact located." We think this stated the rule correctly. The plaintiffs did not complain that this was an erroneous statement of the doctrine, but submit that the illustration of it was error. There is nothing in the illustration that is inconsistent with the rule as stated and therefore, there was no error upon this point.

XXXII. Exc. 11. A plan was in evidence and in connection therewith a certificate from the clerk's office of an early survey. The certificate of the width and depth of the lots varied from the representation of the width and depth

of the lots as shown on the plan.    In speaking of the discrepancy between the two, the court said: "I regard the certificate that these lots were laid out a certain width and a certain depth, as evidence less likely to be mistaken in respect to it than the lines upon the plan to indicate the shape of these lots."    This was nothing but the expression of an opinion by the court, upon some of the testimony; it was in substance simply stating to the jury that the certificate might be regarded by them as of greater weight than the lots as shown by the lines upon the plan.    It was a very proper caution and a correct one.    It does not appear that they were controlled by this statement of the judge.

*Judgment reversed and cause remanded.*

The petition for a new trial is supported by the affidavits of eight jurors tending to show they misunderstood the charge; that such affidavits are inadmissible, to set aside a verdict, was held in *Sheldon* v. *Perkins*, 37 Vt. 550; *Tarbell* v. *Tarbell*, 60 Vt. 486; *Willey* v. *Carpenter*, 65 Vt. 168.

*The petition is dismissed with costs.*