W. W. SMITH *v.* H. H. REYNOLDS ET AL.

November Term, 1918.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 7, 1920.

*Unresponsive Answer—Deceit—Evidence—Admissions—Letters Proving Knowledge—Failure to Charge in Absence of Request or Exception—Evidence as Part of Principal Transaction—Harmless Error—Questions not Considered on Review—Cross-examination—Court's Discretion—Offer to Purchase as Evidence of Value—Subsequent Acts Inadmissible—Evidence as to Mismanagement of Corporation—Failure to Make Offer on Exclusion of Evidence—Remarks of Counsel—Failure to Properly Charge.*

1. It is not error to strike out an unresponsive answer although it may be pertinent to the inquiry.
2. In an action for deceit in the sale of stock in a telephone company, documents of the company showing one of the defendants

charged with the stock sold to the plaintiff, and credited with commissions, were admissible against him as *prima facie* evidence of an admission; the circumstances being such that it could be inferred that he was conversant with their contents.

3. A letter written by a defendant after the sale of the stock in question, which, in connection with his testimony, tended to prove that the defendants knew that the company was in financial difficulties when the stock was sold to the plaintiff, but fraudulently concealed it from him, was admissible.

4. It was not error to fail to instruct the jury concerning the use to be made of certain evidence, where there was no request to charge, nor any exception to the failure of the court to·charge, in that regard.

5. It was not error to permit the plaintiff to show how his stock was paid for, where the negotiations between him and the one furnishing the money were so related to the principal transaction that they were a part of it.

6. Where the question of the admissibility of certain evidence for the purpose for which it was received is not raised, neither that nor any other question as to its admissibility .will be considered.

7. The evidence as to the giving of a certain note having been received without objection, the admission of the note was harmless.

8. The extent of cross-examination is a matter addressed to the discretion of the trial court.

9. It was not an abuse of the trial court's discretion to exclude evidence that was remote in character.

10. A rejected offer of a third party to buy certain of the property in question purchased by one of the defendants as agent of others without the power of disposal, was not admissible as evidence of its value, nor of such defendant's belief as to its value.

11. Evidence that after the sale of the stock in question telephone experts advised one·of the defendants that the company's property was a profitable proposition was inadmissible on the issue of his good faith in selling the stock.

12. Plaintiff's statement, after examining the company's books, that its manager had misappropriated more than $12,000 was admissible on the question of damages and as impeaching plaintiff's evidence that the company's stock was worthless when he bought it.

13. An exception to the exclusion of a question is unavailing in the absence of an offer showing what the answer would be.

14. Where, after repeated efforts to secure a satisfactory answer from one of the defendants on cross-examination, the examiner remarked, "Dry well," the allowance of an exception to the remark without further action by the court amounted to an implied ruling that the remark was proper.

15. The jury should have been instructed that, in the absence of evidence that R. was the employee or agent of defendant H., the latter was not liable for his false representations unless there was a conspiracy involving him.

ACTION OF TORT for deceit in the sale of stock in certain telephone companies. Plea, the general issue. Trial by jury at the March Term, 1917, Chittenden County, *Butler*, J., presiding. Verdict and judgment for the plaintiff. The defendants excepted. The opinion states the case.

*R. E. Brown* and *Dunnett, Shields & Conant* for the defendants.

*V. A. Bullard* and *C. P. Cowles* for the plaintiff.

TAYLOR, J. The plaintiff brought suit against H. H. Reynolds, Fred Howes, and several others to recover damages for alleged deceit in the sale of certain stock in the Washington Consolidated Telephone and Telegraph Company. Service was had only upon defendants Howes and Reynolds, and they will be referred to when speaking of the defendants. The trial was by jury with verdict for the plaintiff against both defendants, who made separate and independent defences. They bring the case here on exceptions, claiming error in the admission and exclusion of certain testimony, in remarks by plaintiff's counsel in the presence of the jury, in certain portions of the court's charge, and in the refusal of the court to comply with certain requests.

At the time in question defendant Howes lived in Burlington, where he was engaged in the meat business with one Brown under the firm name of Fred Howes & Company. Defendant Reynolds, whose home was at Peterboro, N. H., was formerly a traveling salesman for a concern in Boston and had for some time been doing business with Howes and Brown. The transac-

tion in question involved three telephone companies located in the state of Washington and incorporated under the laws of that state. Howes first became interested in the telephone business. as a stockholder in the Washington Southern Telephone Company and assisted agents of the company in disposing of considerable of its stock in Burlington and vicinity. He interested Reynolds in the stock of the Southern and in October, 1910, Reynolds went to Washington in the interest of the Eastern stockholders. While there a plan was evolved to secure the property and franchises of an independent company, known as the Local and Long Distance Telephone Company. Finally to accomplish the consolidation of these companies a third, known as the Washington Consolidated Telephone & Telegraph Company, was organized. The Consolidated Company took over the Southern by exchange of stock, and acquired the line and other property of the Long Distance through purchase by Reynolds at a receiver's sale, but subject, as it turned out, to an incumbrance to secure outstanding bonds of the corporation. The funds with which to make this purchase were furnished by Howes and Brown and they received in return 150 shares of the common stock of the Consolidated, one-third of which they transferred to Reynolds. Reynolds and Howes became trustees of the new corporation, and at the organization of the board of trustees Reynolds was made president, and Howes treasurer. Soon after Reynolds resigned as president and Howes was elected to fill the vacancy. In the summer of 1911, arrangements were made with one Reed to act for the corporation in the sale of stock on commission, and Reynolds under Reed's employment engaged in the sale of stock in Burlington and vicinity. This arrangement continued until May, 1912, when Reed and Reynolds became partners in the undertaking. Howes cooperated actively with Reed and Reynolds in the sale of stock and they frequently referred prospective purchasers to him. There was evidence tending to show that Howes sold some stock on his own account, or, at least, received some of the commissions on sales.

The negotiations for sale of stock to the plaintiff were begun by Reynolds some time in October, 1911. While they were pending the plaintiff interviewed Howes at Reynolds' suggestion, and finally Howes' partner, Brown, came into the transaction. Plaintiff was induced to purchase preferred stock to the amount of $3,500, paying therefor by a real estate transaction with

Brown of which we will have occasion to speak later. The deal was closed October 28, 1911, and two certificates of stock, one for twenty shares and the other for fifteen shares, were issued to the plaintiff under date of November 1, 1911. The claimed misrepresentations were that certain well-known business men of the vicinity, who were named, had bought and paid cash for the stock; that the preferred stock of the corporation was paying and had paid a dividend of eight per cent.; that the company was operating in the city of Spokane, had a switchboard, central offices, and between five and six hundred telephones there; that they had built in Spokane and were building a line from there to Seattle which they had about half done; that they owned the franchises of the line and there was absolutely no competition; that the stock was a perfectly safe investment; and that the defendants concealed the fact that the corporation was then insolvent.

[1] Exceptions 1 and 2 were taken to the action of the court in striking out as not responsive certain answers of defendant Howes when under examination as a witness for the plaintiff. Having testified that he was treasurer in name during the time in question, he was asked: "What do you mean when you say you was only treasurer in name; do you mean to say that you did not do your duty as treasurer of the company?" Witness answered: "I think it was voted for Mr. Reed to handle the money." Against the objection that the witness' answer indicated that it was the duty of some one else to handle the money and not his duty, the answer on motion, was striken out. Later, having testified that he tried to perform his duty as treasurer of the company, as far as there was any duty assigned him, and that the money raised by the sale of stock was handled by another party, he was asked, "You were the treasurer?", and answered, "Yes, sir; but the other man was voted by the company to handle the money." This answer was striken out on motion against the objection that it was responsive. The rejected answer to the latter question was clearly not responsive; and, as to the former, it depends upon the construction to be given the question. If it called for an explanation, the answer was responsive; but, construing the question as defendants' counsel did in stating their objection, it was not responsive. While the explanation that the witness attempted to give was pertinent to the inquiry, it was discretionary with the court

whether it should be permitted at that time. Besides, if the vote referred to was a matter of record, plaintiff could not thus be deprived of the right to object to the form of proof. Defendants' counsel evidently did not regard the explanation as of any special importance, for they omitted to call the witness' attention to the matter when on the stand in defence, though he testified at length as to Reed's relations to the company. These exceptions do not disclose reversible error.

[2]   Exceptions 3, 4, and 5 relate to the admissibility of certain documents. Plaintiff's exhibit 2 was a statement of account between Fred Howes & Company and the corporation in which Howes & Company are charged with several items of stock sold, including that sold to the plaintiff, and credited, among other things, with commissions. It was offered in connection with Howes' testimony when called as a witness by the plaintiff as an admission in contradiction of his testimony that he had no part in selling stock to the plaintiff, and that he never received any commission on stock sold. It was received as "one of the acts of the defendant in connection with the transaction," against the objection that there was no evidence tending to show that Howes made the statement or knew anything about it. Howes had testified that the paper was something that Reed had made up and that he did not remember anything about it. He admitted that he had no doubt that it was one of the papers that he delivered to the plaintiff. It appeared that shortly after the plaintiff purchased his stock he was notified that he had been elected secretary and treasurer of the corporation; that thereupon he called for the books and papers; and that Howes, in compliance with the request, delivered certain papers to him. Plaintiff testified that the exhibit was among the papers so delivered. Any doubt in this regard is dispelled by evidence later introduced by the defendants.

Plaintiff's exhibit 4 consisted of ten typewritten sheets which the evidence tended to show contained an audit of the books of the company made by an expert accountant after the plaintiff called for the books, and which was delivered to him in lieu thereof by the defendants. So far as appears, only two of three sheets were called to the jury's attention, one a duplicate of exhibit 2, and the other a list of bonus stock, which tended to show that certain of the men, whom it was claimed the defendants represented as having bought and paid for stock, had re-

ceived it as a gratuity. It was objected that the papers were not competent evidence of anything stated therein. As the record stands we have no occasion to consider the other pages of the exhibit. The exceptions to the admission of these two exhibits present the same question.

Ordinarily a statement to be an admission must be made by the party against whom the same is claimed to be an admission, or by his authority, or by some one having authority at the time to speak for him in the premises. *Goehrig* v. *Stryker*, 174 Fed. 897; 16 Cyc. 1037. But the circumstances may be such that a party will be deemed to have adopted as his own statements made by another, though authority for making them is not shown. It has been held that when officers of a corporation have access to the corporate books, and the circumstances are such that it can be inferred that they are conversant with their contents, the entries may be offered as their admissions. *Olney* v. *Chadsey*, 7 R. I. 244; Jones on Ev. §§ 272, 530; 2 Wig. on Ev. § 1074; note Ann. Cas. 1917 D, 561. Moreover, the use by a party of a document made by another sometimes amounts to an approval of its statements as correct, in which case the document may be received against him as an admission by adoption. 2 Wig. on Ev. § 1073. See *Smith* v. *Martin*, 93 Vt. 111, 106 Atl. 666, 673. There can be no doubt that in the circumstances shown the statement of Howes' account with the corporation was admissible as *prima facie* evidence of an admission. It would be for the jury to say, on all the evidence, whether it should be taken against him. We spend no time with the list of bonus stock, as all that could be claimed for it was otherwise admitted by the defendants.

[3, 4] Plaintiff's exhibit 23 was a letter from Reynolds to one Purdy, the local manager of the Consolidated Company, under date of February 19, 1912. It was received as evidence against Reynolds alone under his objection that it was written after the stock was sold to the plaintiff and that it did not bear upon any issue in the case. It was in evidence that the Consolidated Company was in the hands of a receiver as early as August 11, 1911, Purdy being the receiver. It was claimed that the defendants knew that the company was in financial difficulty at the time the stock was sold to the plaintiff, but fraudulently concealed it from him. The fact that this letter in connection with Reynolds' testimony tended to support plaintiff's claim in

this regard is a sufficient answer to the objection. Moreover, there was a claim of conspiracy to defraud purchasers of stock involving both defendants, and the letter contained circumstantial evidence in support of this claim. Howes cannot be heard to complain that the jury was not instructed concerning the use to be made of this evidence, as there was no request to charge, nor any exception to the failure of the court to charge, in this regard.

[5] Under exceptions 5 to 8, inclusive, the defendants insist that it was prejudicial error to permit the plaintiff to show how the stock purchased by him was paid for. The evidence complained of was this in substance: Having secured plaintiff's promise to purchase some of the stock if he could realize on a certain farm mortgage, Reynolds proposed to Howes' partner, Brown, that he trade for the mortgage to get the money for the telephone company. Reynolds introduced Brown to the plaintiff as a customer for the mortgage and Brown conducted the subsequent negotiations. The plaintiff deeded the farm, valued at $4,000, to Brown and received therefor the stock in question, valued at $3,500, and a note for $500 signed by Brown and Howes. The stock was issued by the company directly to the plaintiff and was paid for by Brown, $2,000 in cash, and the balance in a note. It is urged that, as defendants admitted that plaintiff had paid for the stock, it was wholly immaterial how he obtained the money, and that the only purpose of showing this fact was to prejudice the jury against them. Ordinarily it would be immaterial in a transaction of this kind where or how the purchaser procured the money with which to pay, and the circumstances might be such that the immaterial evidence would be prejudicial, as was held in *Sheperd* v. *Mason Lumber Co.,* 166 N. C. 130, 81 S. E. 1064, cited by the defendants. The question here is wholly unlike that in *Jewett* v. *Buck,* 78 Vt. 353, 63 Atl. 136, also cited by the defendants. Here the negotiations between Brown and the plaintiff were so related to the principal transaction that they were a part of it. Besides, the whole course of the dealings tended to support plaintiff's claim that there was a concert of action among these parties.

[6] When the plaintiff purchased the stock, it was agreed in a writing signed by Howes as president of the company that the company would take back fifteen shares of the stock and refund $1,500 and interest at the plaintiff's option at the end of

one year. Before the expiration of the year the plaintiff, for reasons not now material, decided to exercise the option and so notified Howes. Howes called on the plaintiff and told him the company had been buying a lot of poles, paying out money for supplies, had not taken very much for stock, and asked him to extend the agreement with the company for another year. Against the objection that it was immaterial and had no tendency to establish any of the charges in the declaration, plaintiff was permitted to testify that Howes told him that the company was solvent and all right and had been extending their lines in different directions. The evidence was received under exception as tending to show Howes' connection with the whole transaction. Defendants brief this as their ninth exception. They take the position that the evidence was erroneously admitted to show that fraudulent representations were made by the defendants in the original sale of stock and do not discuss the admissibility of the evidence for the purpose that it was received. The question argued is outside the case, and we have no occasion to consider whether the evidence was admissible for the limited purpose.

[7] Plaintiff testified without objection that soon after the interview with Howes last referred to he learned that the company was in the hands of a receiver; that a meeting of the stockholders was subsequently held at which the situation of the company was explained and plans were considered for raising money; that a few days later Brown and Reynolds called on him and proposed that he put in $750 to get the property of the company out of the receiver's hands, as they each had done; that upon his declining to do this, Brown proposed that if the plaintiff would give up the agreement concerning the $1,500 and retain the stock, he would put in $750 more for the plaintiff, to which the plaintiff agreed; that Brown then said he was not prepared to put the money in just then and proposed that the plaintiff advance the money and take a note signed by Howes and himself for the amount; that accordingly the plaintiff handed Reynolds a check for $750 and the agreement concerning the $1,500 of stock, and in return received a note signed by Howes and Brown, which had never been paid. The note being offered, it was objected to as "not any matter connected with this case and occurred more than a year after the transaction in issue here." The note was received subject to the objection and exception of.

the defendants. They brief this as their tenth exception. It should be unnecessary to say that, the evidence recited being in the case, the reception of the note was entirely harmless.

[8]   Nor is prejudicial error shown under the eleventh exception. It relates to evidence elicited from Howes on cross-examination concerning the execution of the note referred to in the preceding exception, admitted against the objection that it was not cross-examination and not germane to any controversy raised in the case. It was not proper cross-examination, but that was a matter addressed to the discretion of the court. It covered some of the minor details of the execution of the note which had already appeared in evidence without objection, and so was harmless.

The twelfth exception is without merit. The questions asked Howes in cross-examination that were objected to elicited answers that were either colorless or made weight for the defendants.

[9]   The plaintiff claimed that the stock was worthless at the time he purchased it. In support of this claim he was permitted to show the subsequent history of the corporation culminating in bankruptcy early in 1913. It appeared in cross-examination of the plaintiff that the property of the Consolidated Company was bid off by him at the receiver's sale for $2,100; that he made repeated endeavors to dispose of it but failed; and that he finally sold it for stock in the Davenport Independent Telephone Company. He was then asked how much stock he got for the property, and, pending an objection that it was immaterial, defendants offered to show that he received "a large sum in stock." The question was excluded as not proper cross-examination. Defendants brief the exception then taken as the thirteenth exception. Later the defendants called the plaintiff as their witness and offered to show by him "the sum received" for the property as tending to show its value. On an objection that the offered evidence was immaterial it was excluded and an exception briefed as exception 17 was taken. Manifestly the last offer was to show how much stock the plaintiff received for the property. It was not error to exclude the questions. While, as the case was being tried, the value of the property at the time plaintiff purchased it was material and the price received for it at a forced sale would not be conclusive as to its value (*Crampton v. Valido Marble Co.*, 60 Vt. 291, 301, 15 Atl. 153, 1 L. R. A. 120;

*Slayton* v. *Drown,* 93 Vt. 290, 107 Atl. 307), the offered evidence was so remote in character, if not in time, that it was not abuse of discretion for the court to reject it. The price paid being in stock, the admission of the evidence would have opened the door for an investigation of the financial affairs of that company as well, and would have unnecessarily prolonged and complicated the trial. See 16 Cyc. 1112; *Amoskeag Mfg. Co.* v. *Head,* 59 N. H. 332, 338; *State* v. *Kelley,* 77 Conn. 266, 58 Atl. 705.

[10] An exception numbered 14 was taken to the exclusion of an offer to show by Reynolds that immediately after he purchased the Local and Long Distance line a representative of the Home Telephone Company operating in the city of Spokane offered him $26,000 in cash for the property, as bearing upon its value and upon his understanding of the value. Defendants in effect admit that an offer made for a piece of property is not under ordinary circumstances proper evidence of its value, but say that it sometimes is—citing *Phelps* v. *Root,* 78 Vt. 493, 63 Atl. 941, and *Belka* v. *Allen,* 82 Vt. 456, 74 Atl. 91. Neither of these cases is authority for making the bare offer of a third party proper evidence of value. In fact, the latter case impliedly indicates that it would not be. In both the offer was made by the owner of the property and was held to be evidence of what he considered the property worth and, in the circumstances, admissible against him as an admission. On principle and by the great weight of authority such an offer as here is not admissible as evidence of value. *Sharp* v. *United States,* 191 U. S. 341, 48 L. ed. 211, 24 Sup. Ct. 114; *Hine* v. *Manhattan R. Co.,* 132 N. Y. 477, 30 N. E. 985, 15 L. R. A. 591; *Crosby* v. *Dorward,* 248 Ill. 471, 94 N. E. 78, 140 A. S. R. 230; *Davis* v. *Charles River Br. R.,* 11 Cush. (Mass.) 506; 10 R. C. L. 956; 16 Cyc. 1135. Additional cases will be found by consulting 8 Dec. Dig., Evidence, K. N. 323 (3). A full statement of the reasons for the rule excluding such evidence is found in *Sharp* v. *United States, supra.* Moreover, the question of remoteness was involved, and the circumstances were such that if the evidence were otherwise admissible its exclusion was a matter of discretion with the trial court not reviewable here. See *Smith* v. *Martin, supra.* Nor would the fact that the offer was made have any legitimate tendency to show what he believed as to the value of the property. He had purchased it as the agent of others and had no choice as to its disposal. How it would have been if he had had the right

to accept or reject the offer we have no occasion to consider. At most, it would be only evidence of a reasonable ground of a belief to which he might have himself testified, but did not.

[11]   It appeared that Reynolds went to Spokane in July, 1912, with two telephone experts to have them look over the lines of the Consolidated Company and see what they thought of it as a practical telephone proposition. It was offered to show by Reynolds that these men advised him that it was a profitable proposition, as bearing upon the question of his good faith in selling whatever stock ''they have told us he sold after that time.'' Under the objection that it was hearsay, the offered evidence was excluded, and the defendants saved an exception which they brief as number 15. It is argued that the evidence was admissible on the issue of good faith. It may be conceded that in an action of this kind a party may show that he acted in the matter complained of upon trustworthy information, or the advice of reliable parties, as tending to show his good faith. See *Baker* v. *Sherman,* 71 Vt. 439, 449, 46 Atl. 57. But it goes without saying that the advice or information must precede the act under investigation to have any such force. Confessedly, the advice here would not affect the act complained of. That is not claimed. But it is said that it would have a bearing upon similar representations shown to have been made by the defendants to persons other than the plaintiff subsequent to the time the stock was sold to him. Our attention is called to no such evidence, and an examination of the transcript discloses that there was none, relating to a transaction subsequent to receiving the advice. It is not made to appear that the court erred in excluding the evidence.

[12]   Exception 16 was taken to the exclusion of an offer to show, as accounting for the reason that the property did not yield what it was represented as likely to yield, and also as impeaching the plaintiff, that after examining the books of the company plaintiff said that Purdy (the local manager) had taken more than $12,000 from the company that he had not accounted for, and that the officers ought to have known he was using up the money that way instead of spending it in the telephone business. As the case was being tried on the question of damages, it was error to exclude this evidence. The plaintiff had gone into the financial affairs of the company at great length in support of his claim that the stock was worthless when he bought it. It

thus became material for the defendants to show that the failure of the company was due to mismanagement. Among other things, they claimed that Purdy had misappropriated the funds of the company. It appeared that the plaintiff had investigated the company's affairs soon after the bankruptcy proceedings were instituted. It was competent to show Purdy's misconduct by plaintiff's admission contained in the offer. And statement that Purdy had taken the sum named from the company which he had not accounted for was a direct contradiction of plaintiff's testimony with reference to this subject brought out in cross-examination. It was not an attempt to impeach the plaintiff on a collateral issue, for the matter inquired about had such a connection with the issue that the defendants would, as we have seen, be entitled to give it in evidence. *Comstock's Admr.* v. *Jacobs,* 84 Vt. 277, 283, 78 Atl. 1017, Ann. Cas. 1913 A, 679; *Niebyski* v. *Welcome,* 93 Vt. 418, 108 Atl. 341.

[13]   One of the telephone experts employed to examine the lines of the Consolidated Company, after detailing his examination of the property and his investigations concerning telephone possibilities in the vicinity where the company was operating, testified in substance that he considered it a good opportunity for investment in the way of completing and operating the uncompleted lines. He was then asked whether, after he had examined the property, he invested in the stock of the company. The question was objected to as immaterial, the examiner observed, "We think it is proper as bearing on the value of his testimony," and the court excluded the question, noting an exception by the defendants. The absence of an offer showing what the answer would be renders the exception unavailing.

[14]   Exception 19 was taken to comment of counsel in the course of the cross-examination of one of the defendants. Having failed, after repeated attempts, to secure a satisfactory answer, the examiner remarked: "Dry well." The court allowed the exception asked for and left the matter there. This amounted to an implied ruling that the remark was proper. *Baker* v. *Sherman,* 71 Vt. 439, 446, 46 Atl. 57. We have no doubt that the comment aptly expressed the examiner's feelings; but that does not excuse, though it may mitigate, the offence. As there must be a reversal for error elsewhere, we take no further notice of this exception. In view of the frequent recurrence of exceptions of this nature we are prompted to call

attention to the observations of TAFT, C. J., concerning remarks by counsel during the examination of witnesses to be found in the case last cited.

[15]   The defendants brief two exceptions taken to argument of counsel and several exceptions to the charge, all of which present questions not likely to arise on a new trial and so need not be considered.   Exception 27 was to the failure of the court to comply with defendants' sixth request, which was as follows: "It does not appear that the defendant Reynolds was the employee or agent of the defendant Howes in the selling of this stock, but rather that he was the employee or agent of the Washington Consolidated Telephone and Telegraph Company, and not being the employee of defendant Howes, Howes is not liable for his false representations, if he made any, unless he conspired with him within the rule set forth in paragraph two of these instructions." The reference was to defendants' second request relating to what would .constitute conspiracy, which was substantially complied with.   The charge as given was not adapted to the case made by the evidence.   The jury was told that Howes would not be personally bound by Reynolds' representations in the absence of a conspiracy, "if Reynolds was acting for the telephone company in the sale of this stock by the employment of Howes. If Reynolds was the agent of Reed, * * * and Reed was the agent of Howes with authority or apparent authority to employ Reynolds, and he made the false representations * * * within the line of his duty, or the scope of his apparent authority, * * * then both Reynolds and Howes would be liable, if they were fraudulent, and Howes took the benefit of the fraud."   Evidence introduced by the plaintiff showed that at the time in question Reynolds was employed by Reed, who was acting for the company under a contract negotiated by Howes, its president.   There was no evidence tending to show that Reed was employed by Howes personally, and none that Reynolds was in any sense Howes' agent.   The substance of the request was that the jury be instructed that Reynolds, not being the employee or agent of Howes, the latter was not liable for his false representations in the absence of a conspiracy involving him.   In the absence of evidence that Howes authorized the representations, this was the rule of law applicable to the case, and the jury should have been so instructed.   *Arnold* v. *Somers*, 92 Vt. 514, 524, 105 Atl. 260. It is contended that the reference to Reynolds as an employee or

agent of the company vitiated the request. However that may be, we have said enough on this subject for the purposes of a new trial.

*Judgment reversed, and cause remanded.*