CAPITAL GARAGE COMPANY *v.* MAX L. POWELL.

October Term, 1925.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed November 6, 1925.

*Ejectment—Damages—Gross Receipts Not Evidence of Mesne Profits—Offer of Evidence—Law of the Case.*

1. In action of tort by successful party in ejectment, for damages for unlawfully withholding public garage, admission of deposit slips showing money deposited by former owner while running garage in question, *held* error, said slips at most being only evidence of gross receipts, and the law not recognizing gross receipts as constituting the mesne profits which a landlord may recover as damages against a tenant after eviction, such error not being rendered harmless because deposit slips were less in the aggregate than receipts from business during time of actual detention in question.

2. Exception to exclusion of evidence on direct examination is unavailing, where no offer was made as to what was expected to be proved.

3. Where evidence on question of damages, at retrial of case after remand from Supreme Court was similar to and as much as that before court at former trial, ruling of Supreme Court in former case that evidence of actual damage was sufficient to go to jury is law of case on retrial, and precludes further consideration of matter.

ACTION OF TORT by successful plaintiff in ejectment for damages for wrongfully withholding property. Plea, general issue. Trial by jury at the March Term, 1925, Washington County, *Fish,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. *Affirmed as to liability, reversed and remanded as to damages.*

*John W. Gordon* and *Max L. Powell* for the defendant.

*H. C. Shurtleff* for the plaintiff.

WATSON, C. J. When this case was here before (as reported in 98 Vt. 303, 127 Atl. 375) we held that the measure of damages was the loss of profits, and the judgment was reversed and cause remanded because of errors of the trial court in ruling otherwise, and in rulings as to the admissibility of certain evidence bearing on the amount of damages so measured, and that there was no evidence showing actual damages suffered by the plaintiff company. Reference is made to the opinion of this Court in the case as then reported for further particulars.

On remand a new trial was had and damages were assessed according to the rule thus laid down in review, the verdict being for the plaintiff to recover $900 in damages. The case is now here on defendant's exceptions to rulings made below on questions of evidence bearing on the damages as now assessed.

No question was made by defendant but that the plaintiff was entitled to recover on the basis of loss of profits, for the detention of the garage in question by defendant for the period between November 22, 1922, and October 18, 1923, the real bone of contention being as to the evidence and its legitimate tendency. The deposition of Ernest F. Dillon (taken by order of court, he being ill and unable to attend court) was used by the plaintiff, some parts of it being admitted subject to defendant's exception. Therein the deponent testified that he had lived in Montpelier twenty years, was a mechanic, and had been in the garage business eighteen years or more, ending in December, 1924; that he was in that business as Dillon & Almon, and had been owner, manager, head mechanic, and "most everything around there"; that he was in the Capital Garage in question from the time the Capital Garage Company moved in there until that company sold their stock to the Burnell-Faulkner Company, and while thus there was manager; that this garage is on the south side of Court Street in Montpelier, and in the rear of the Pavilion Hotel with which it is connected; that that garage drew the very best tourist trade, was equipped for winter storage, and had 65 cars of paid storage; that it had three floors connected by elevator, and could handle about that number of cars; that when he was manager of the Capital Garage Company the company employed around twelve men in the dull months and twenty to twenty-five in the summer, the number of men employed indicating the amount of work done there; that deponent worked there from November 22, 1922, to October 18, 1923, and was familiar

with the garage during that period; that deponent thought the dimensions of the garage were from 110 or 120 feet deep and 60 feet wide, three floors, built of reinforced concrete and cement, fire proof, and steam heated; that there was an equipment for washing cars, a paint shop around 36 feet by 30 feet, and a varnish room of the same size, two gas tanks, a battery room having capacity for handling around 500 batteries; that there was a machine shop having lathes, drills, shapers, grinders, a blacksmith forge, a battery charging equipment "and all that"; that aside from the elevator machinery and some of the shafting, the machinery and tools were owned by the Capital Garage Company and put in there for its purpose. In connection with and attached to Dillon's deposition were fourteen certain deposit slips showing money deposited in the bank by Dillon & Almon when running this garage, the first deposit so shown being on May 8, 1919, and the last on June 2, 1919. The deposits severally ran in amount from $103.88 to $596.88, and in the aggregate were $2,927.46. These deposit slips were admitted in evidence subject to defendant's exception on the grounds that (1) they relate to a period too remote, (2) the mere fact that certain sums of money were deposited in the bank does not show how the business succeeded, whether there was a profit or a loss, and cannot aid the jury in determining the damages due to the plaintiff, if any, (3) no adequate foundation was laid for their admission by showing their similarity of business, and (4) there was nothing to show the amount of business done, to show the profits.

It appeared from other evidence in the case that Dillon & Almon sold out to the Burnell-Faulkner Company in November, 1919, from which time that company operated this garage until January 1, 1921.

[1] There was no evidence tending to show the amount of business done at the garage during the period covered by those deposit slips, nor was there any evidence tending to show the expense attending the carrying on of the business during that time, nor to show the profits, if any there then were, nor to form a reasonable basis on which any computation could be made as to whether there were in fact any profits. If the sums deposited can here with reason be said to stand for anything connected with the business, it is for the gross amounts of money received from day to day named, and the aggregate sum for the gross

receipts of money during the whole period. But such gross receipts do not show nor tend to show the value of the use and occupation of the garage, for they include not only the profits, if any, but also the labor and expense required in producing the profits. Standing alone, the law does not recognize such gross receipts as constituting the mesne profits which a landlord may recover as damages against a tenant after eviction. *Johnston* v. *Fish,* 105 Cal. 420, 38 Pac. 979, 45 A. S. R. 53; *Page* v. *Fowler,* 39 Cal. 412, 2 A. R. 462; *Stockwell* v. *Phelps,* 34 N. Y. 363, 90 A. D. 710; *Peshine* v. *Shepperson,* 17 Grat. (Va.) 472, 94 A. D. 468; *Donnell* v. *Jones,* 17 Ala. 689, 52 A. D. 194; *Brown* v. *Linn Woolen Co.,* 114 Me. 266, 95 Atl. 1037. For the same reason such gross receipts, standing alone, were not evidence tending to show what the mesne profits in question were, and their admission as evidence for that purpose was prejudicial error. Nor is this the only difficulty with the ruling. The receipts of money, shown by the deposit slips for the period of time mentioned, may have been larger than usual, or may have been the result of exceptional circumstances. There was nothing indicating that they constituted a fair measure by which the value of the mesne profits of the business in the future could be ascertained with reasonable certainty. For this reason their admission in evidence was error. *Kostopolos* v. *Pezzetti,* 207 Mass. 277, 93 N. E. 571, Ann. Cas. 1912A, 859; *Lowrie* v. *Castle,* 225 Mass. 37, 113 N. E. 206; *Russell* v. *Olson,* 22 N. D. 410, 133 N. W. 1030, 37 L. R. A. (N. S.) 1217, Ann. Cas. 1914B, 1069.

It is urged by the plaintiff, however, that even though the deposit slips were erroneously admitted in evidence, the error was harmless because they were less in the aggregate than the receipts from the business during the time of the actual detention in question. But we do not adopt such a course of reasoning as sound. The aggregate receipts so shown were more than three times the amount of the verdict and, coming from a disinterested source as that evidence did, it was quite likely in its nature to influence the jury in arriving at the amount of their verdict.

In disposing of the foregoing questions, we have given no attention to the remoteness of the evidence.

[2] W. N. Theriault, called as a witness by defendant, testified that as attorney for Kenney & Chase he settled with their creditors for less than the face of their claims. He testified to the approximate amount of the assets of Kenney & Chase

and to the amount he paid on the claims of their creditors. The witness was then asked to state the per cent. he paid on those claims, and on objection being made the evidence was excluded and exceptions saved. In this connection it is enough to say that no offer was made as to what the defendant expected to show, without which the exception is unavailing. *Murray* v. *Nelson,* 97 Vt. 101, 122 Atl. 519; *Smith* v. *Reynolds,* 94 Vt. 28, 108 Atl. 697. For the same reason, the two exceptions briefed by defendant, to the exclusion of certain questions asked him by his own attorney, when testifying in chief in his own behalf, are unavailing.

Exception was saved to a certain part of the argument of plaintiff's attorney to the jury on the question of damages, but it is not considered, since there is to be a reversal as to that branch of the case on other grounds.

[3] At the close of the evidence defendant made a motion for a directed verdict in favor of the plaintiff, for nominal damages, on the ground, in short, that on the evidence the latter was entitled to such damages only. This motion was overruled and exception saved. At that trial the evidence on the question of damages was at least similar to and as much as that before the court at the first trial when a like motion was granted. To that ruling the plaintiff excepted and the question thus raised was brought to this Court for review. Thereon we held that there was sufficient evidence of actual damages before the trial court to entitle the plaintiff to go to the jury, and consequently the ruling was error. Nothing more need be said in disposing of the motion now before us than that the holding then made in such respect is the law of the case and precludes further consideration. *Guilmont's Admr.* v. *Central Vt. Ry. Co.,* 82 Vt. 266, 73 Atl. 580.

*No question being made as to defendant's liability, the judgment is affirmed except as to damages. As to the latter question the judgment is reversed and cause remanded.*