SOLON S. NEWTON *v.* AMERICAN CAR SPRINKLER COMPANY.

November Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

Opinion filed October 14, 1914.

*Principal and Agent—Declarations of Agent—Liability of Principal—Evidence—Conclusion of Witness—Admissions —Cross-examination—Scope—Redirect Examination—Reformation of Instruments—Review—Reservation of Grounds of Review—Harmless Error—Exceptions—Sufficiency— Equity—Proceedings Before Master—Stenographer's Notes —Costs—Award—Discretion of Court.*

Where a landowner told a prospective purchaser of trees growing on the land that designated persons would go with him and show him the boundaries of the timber proposed to be sold, which they did, the landowner is bound by their declarations.

In a suit involving the construction of a deed conveying timber, a question asked the grantor as to whether she understood that a corner described in the deed as the "southeast corner of the mowing" was the point located by her agents, when they showed the property to the grantees, was not improper as calling for a conclusion of the witness.

In a suit to reform a deed of timber so as to make it express the true boundaries of the property intended to be sold, where the principal issue was what was meant by the expression "southeast corner of the mowing", and the mowing had two corners in the southeast boundary, the question of what was intended by the parties was very material.

In a suit to reform a deed of timber, where the grantor on direct examination had been questioned as to what she meant by designated language in the deed describing a corner, it was proper on cross-examination to question her as to whether she understood that corner to be the one located by her agents, when they showed the property to the grantees.

In a suit involving the issue as to what was meant by the description in a deed of timber, which designated the easterly boundary of a reserved tract, defendant's witness was properly allowed to testify

that, while logging on the land adjoining the reserved tract on the east, he stopped cutting at the line claimed by defendant because orator told him that that line was the easterly boundary of the reserved tract.

In a suit involving the construction of a deed conveying timber, where orator had cross-examined its grantor as to the reason why the witness was defending the suit, he was properly allowed on re-direct examination to explain that it was because he had warranted the title.

Where cross-examination elicits incompetent testimony, the witness is properly allowed on redirect examination to explain the transaction.

In a suit involving the construction of a deed conveying timber, the admission of hearsay testimony as to conversations between the purchasers relating to the price they would pay was harmless.

A mere objection to the admission of evidence reserved no question.•

Exceptions that do not clearly present the questions attempted to be raised will not be considered on review.

Where, at the suggestion of orator's solicitor, the solicitor's stenographer was appointed to take the testimony at the hearing before the master, and the master discovered that the stenographer was incompetent, it was not improper for the master, for the purpose of refreshing his memory, to consider a transcript of the testimony taken by the stenographer of defendant's solicitor.

In a suit in chancery involving the construction of a deed conveying timber, where orator claimed that defendant had committed many trespasses, the fact that orator recovered only a small money judgment, and did not sustain his contention as to the construction of the deed, does not show such an abuse of discretion by the court of chancery in awarding costs in his favor as to require a reversal of the decree.

APPEAL IN CHANCERY. Heard at the June Term, 1913, Windsor County, *Miles*, Chancellor, on the pleadings, master's report, and orator's exceptions thereto. Exceptions overruled, and decree for the orator for $11.11, with costs. Both parties appealed. The opinion states the case. The reporter's utmost efforts have been unable to get the plan referred to in the opinion. No one seems to know what has become of it.

*Davis & Davis* for the orator.

*David A. Pingree* for the defendant.

WATSON, J.   On June 25, 1907, Nellie E. Newton, as administratrix of the estate of Tyler J. Newton, deceased, by her deed of warranty, conveyed to Rand, Tripp, and Tennant. their heirs and assigns, certain rights and interests in the farm in Hartford, this State, of which the said Tyler J. was the owner at the time of his death, and on which he and his family then resided.   Nellie E. is his widow, and the orator is his son.   The rights and interests in said farm thus conveyed by the administratrix are described in the deed as follows:  "All the pine, hemlock, white birch, ash, red oak, and basswood lumber, now standing and growing on the farm of the late Tyler J. Newton, in the town of Hartford, down to six inches in diameter, four feet from the ground, excepting and reserving the top limbs and wood from said lumber, and all wood and timber standing by itself and adjoining the above described timber on the east; said reserved wood and timber is bounded as follows, viz: southerly by the highway, westerly by the land of John and Frank Matthews, easterly by the lot on which above mentioned timber stands, by a straight line from an old water trough by the highway to the southeast corner of the mowing on the said Newton farm, except eight trees, together with the right to enter on said premises and cut down and remove said timber any time prior to May 2, 1912, doing no unnecessary damage."   On the 5th day of August, 1907, Tripp and Tennant conveyed to Rand all the right, title, and interest they acquired under the aforementioned deed from the administratrix, and on the 15th day of the same month Rand conveyed all his right and title, including the title he had acquired from Tripp and Tennant, to the American Car Sprinkler Company.   On March 22, 1910, the administratrix conveyed said farm to the orator, reserving from the operation of the deed the rights and interests previously conveyed by her to Rand, Tripp, and Tennant.

At the hearing before the master the orator introduced in evidence a plan, drawn according to scale, of the *locus in quo*, marked "Orator's Ex. C."   The highway and the "mowing," mentioned in the deed from the administratrix to Rand, Tripp, and Tennant, are shown on the plan.   The point marked "A"

on the plan indicates the location of the "old water trough by the highway," mentioned in the deed. Concerning this point there was no dispute. The "mowing" is irregular in shape, having two corners in its southeast boundary, either one of which answers the designation "southeast corner of the mowing," given in the deed. These two corners are marked on the plan, the more easterly as "B", and the more westerly as "C." The most important question before the master was, whether the "southeast corner of the mowing," referred to in the deed, was at the point marked "B," as the orator claimed and as his evidence tended to show, or at the point marked "C," as the defendants claimed and as their evidence tended to show.

The negotiations resulting in the conveyance from the administratrix to Rand, Tripp, and Tennant were commenced more than a month before the deed was given. Within that time Mrs. Newton and Rand had several interviews about the matter. At one of their meetings Mrs. Newton told Rand what timber she wanted to sell, the kinds, and size, and what reservation she wished to make, and told him that such reservation covered what timber was westerly of a straight line extending from the water trough by the highway to "the southeast corner of the mowing," except that eight large trees standing on the reservation were included in what she offered for sale. She then told him that her son (the orator) and one Truell, a real estate agent who was then present and was interested in said negotiations, would go with him (Rand) and show him over the farm and point out "the southeast corner of the mowing." Thereupon Rand, accompanied by the orator and Truell, made an examination of the timber and traveled over a large part of the timber land, in the course of which a corner in the mowing fence was pointed out to Rand by the orator or Truell as "the southeast corner of the mowing," and as the point to which a line from the water trough would extend to mark the easterly bound of the reservation. Mrs. Newton never went on to any part of the territory with any of the defendants, or pointed out to any of them the boundaries of what she desired to reserve, but left that matter entirely to the orator and Truell. She had no personal knowledge of the particular point which they showed to Rand as "the southeast corner of the mowing," but testified that they acted as her agents in showing the timber to Rand in pointing out the boundaries to him, and that Truell continued to act as her agent

throughout the negotiations (in the language of the exceptions) "until the sale was made and everything was finished up and she got her pay." On other occasions later, and before the terms of the sale were agreed upon, the same corner was shown to Tripp by the orator and Truell, and was shown to Tennant by Truell when Tennant, Rand, and Truell visited the premises.

. It is a rule of law .that "if one party refers another, on a disputed fact, to a third person, as authorized to answer for him, he is bound by what his referee answers upon the occasion, as much as if the answer had been made by himself." *Aldridge* v. *Aetna Life Ins. Co.*, 204 N. Y. 83, 97 N. E. 399, 38 L. R. A. (N. S.) 343.

The master finds that "Only one point was ever shown to Rand, Tripp or Tennant by the orator or Truell as marking the southeast corner of the mowing. Throughout the negotiations all of the parties understood that the point referred to, and later mentioned in said deed, as the 'southeast corner of the mowing,' was the point that had been pointed out by the orator and Truell, on the different occasions above referred to, as such."

It is further found that the point marked "C" on the plan was the point which Rand, Tripp, and Tennant had a right to understand and did understand at the time the deed from the administratrix to them was executed and delivered, to be the point referred to in that deed as "the southeast corner of the mowing." Thus it was established on the evidence that the "said reserved wood and timber," mentioned in the deed, is bounded easterly by a straight line from point "A" on the plan (place of "old water trough by the highway") to the southeast corner of the mowing, at point "C", on the plan.

The exceptions argued are here numbered the same as they are numbered 'in the orator's brief.

1. Mrs. Newton, being called by the orator as a witness, testified that at the time the deed was made, either Rand or Tennant asked what was meant by "the southeast corner of the mowing" as used. in the deed, and that Truell answered that it was the corner that had previously been shown to them. She was then asked in cross-examination: "Q. As you understood it the southeast corner was the point your son and Mr. Truell had pointed out to Rand and Tripp when they had been on there to look at it. Did you understand that the southeast corner referred to in the deed was the point showed to Rand

and Tripp when they looked at it, at the time the deed was executed?'' Subject to orator's exception on the ground that this called for the understanding of the witness not communicated to the other party, she answered, ''Yes, I suppose so. I do not know any other southeast corner.'' This exception is without merit. The question did not call for her understanding as to the construction of the deed. It in effect asked whether at the time the deed was executed she understood the southeast corner referred to in the deed, to be the point shown to Rand and Tripp by her son and Truell, sent by her for that purpose.

The bill alleges in effect that the deed from the administratrix to Rand, Tripp, and Tennant was intended by the parties thereto to express as the southeast corner of the mowing, the point which is designated ''B'' on the plan (Exhibit C), and that if the deed does not definitely so state said corner, it should be reformed in this respect; and the prayer of the bill is, in part, that said deed be so reformed as to express the true intention, agreement, and meaning of the parties, etc. And Mrs. Newton, in her answer to the cross-bill, states in effect that the said southeast corner of the mowing, named in the deed, is as alleged in the original bill and as pointed out by the orator and Truell at the time of the original sale and purchase. On this question the understanding of the parties was important. *Utley* v. *Donaldson*, 94 U. S. 29, 24 L. ed. 54; *Abbott* v. *Flint's Admr.*, 78 Vt. 274, 62 Atl. 721. The agents of the administratrix, acting within the scope of their agency, on several occasions during the progress of the negotiations pointed out to Rand, Tripp, and Tennant, or some of them, point ''C'' on the plan as the corner referred to, and at the time of the execution of the deed they were told by Truell, one of the agents of the administratrix and in her presence, that the corner so designated in the deed meant the corner which had been shown them. With this question thus in issue, the understanding of the administratrix at that time, she being a party to the deed, was material and could be shown. *Linsley* v. *Lovely*, 26 Vt. 123; *State* v. *Lockwood*, 58 Vt. 378, 3 Atl. 539; *Wheeler* v. *Campbell*, 68 Vt. 98, 34 Atl. 35. Moreover, she having testified in direct examination that her agent so informed Rand, Tripp, and Tennant at the time of the conveyance to them in answer to their question in her presence, it was within proper cross-examination to as-

certain whether she, as principal, then understood the matter in the same way.

3. The territory east of the line A-C on the plan was logged during the winters of 1907-08 and 1908-09. The work was under the supervision of Roy Crockett. He was called by the defendants as a witness and testified that he had nothing to do with the territory in dispute; that he stopped cutting at the line A-C. Subject to orator's exception, the witness was permitted to testify that the reason why he stopped at that place was because the orator informed him that that line was the easterly boundary of the reserved tract. If the orator then so stated, it is evident that his understanding was then contrary to the claim he is now making, concerning a matter of which he then had full knowledge. The evidence was properly received.

6. Rand, a witness for defendants, being cross-examined by the orator, testified that he expected to bear his proportion of the expense of the suit so far as it was his duty to defend it; that he understood he was bound to defend the suit on account of the deed he had given. In redirect examination he was asked: "Was it on account of that warranty deed from you to the Car Sprinkler Company that you felt compelled, as you stated to Mr. Davis, to appear here and take part in the defence of this case?" Subject to exception, the question was permitted, and no exception was taken to the answer. In view of the cross-examination, this redirect examination was proper.

8. It appears that the witness Tripp and the defendant Tennant were copartners in lumbering business and had been for years. It had also appeared that Rand commenced the negotiations which resulted in the conveyance to Rand, Tripp, and Tennant, but before the deed was executed Tripp and Tennant became interested therein. Tripp testified on cross-examination by the orator that he left the matter of the trade with Rand and Tennant; that he knew when he went in to the negotiations that the price was to be $8,500, that Rand told him so. He was then asked (the cross-examination continuing) whether he knew at the time he agreed to go in to the trade that the price was to be that sum, and he answered: "Yes, sir, we were going to buy it together."—The witness being interrupted by the master, defendants' counsel suggested that the witness should have the privilege of explaining, and (by permission of the master) he asked the witness what explanation he sought to

make. The witness answered: "I had a talk with Mr. Rand and he supposed he was going to buy it at $7,500, if the option ran out, and I said buy it; and afterwards he and Mr. Tennant had a talk and they said"—Orator's counsel here objected to the witness proceeding with the answer, as it was hearsay. Subject to exception on this ground, the witness further answered, "He and Mr. Rand had a talk and he said the price was $8,500." The master asked the witness who told him that, and was answered by the witness, "Mr. Tennant told me." This part of the answer was in explanation of an answer given to a question in cross-examination and was the same in character, as to being hearsay. The orator is not in a position, therefore, to find fault on that ground. Moreover, what the witness said under the exception was harmless.

9. Nelson L. Doe was called by the defendants and testified that he made the plan introduced by defendants; that he was a student at the Thayer School of Civil Engineering at Hanover, and that the witness John V. Hazen, called by the orator, was one of his instructors. Hazen, when called later by defendants, was asked if he considered Doe a competent engineer, and answered in the affirmative. The orator objected to this, but it does not appear that an exception was saved.

13 and 15. Neither of these exceptions is presented for record in a way to convey an accurate idea of the question attempted to be raised. Hence they are not considered.

24. On request of the master, the chancellor appointed an official stenographer to take the evidence at the hearing. The stenographer in the office of orator's solicitors being suggested by them as competent to do the work, the master gave her name to the chancellor and she was appointed. Counsel for defendants had a stenographer present at the trial, who also took the evidence. During the progress of the trial, the master became convinced that the official stenographer was inexperienced in that kind of work and was not taking full or accurate minutes. Thereupon the master took such minutes himself as he was able to take, considering the rapid progress of the hearing. It being apparent to him that the other stenographer was taking fuller and more accurate minutes than the official stenographer, the master, after the conclusion of the hearing and before leaving the place where it was held, asked defendants' solicitors whether they were to have the proceedings transcribed, and being in-

formed that they were, he requested to be furnished a copy of the evidence. Such a copy was furnished the master later, and that fact was by him immediately called to the attention of orator's solicitors. They objected to the master's using the copy so furnished for any purpose, it not being the production of the official stenographer. The master made no use of this copy, except to refresh his recollection. Orator never furnished the master with a complete transcript of the official stenographer.

The action of the master in this respect is severely criticised by solicitors for the orator, claiming that by reason thereof the orator is entitled to a new trial.

Though the course taken by the master was somewhat out of the course ordinarily pursued, yet the conditions confronting him were out of the ordinary. In view of the circumstances, we do not think his actions in the respect named are justly subject to the criticism made, and they do not afford sufficient ground for a new trial.

In this connection we take occasion to say that the appointment of a person from the office of counsel for either party, as official stenographer at a hearing of a cause, is not to be commended.

30.   This exception is to the refusal of the orator's so-called 26th request. The master's answer thereto was that he regarded it ''as argument and not a request for finding.'' It is sufficient to say that we agree with the master. No request was there made—it was but an argument.

The court below awarded full costs to the orator. The defendants say this was inequitable, since the Car Sprinkler Company sustained all material points in its defence, the finding against it being only that it cut trees which it had no right to cut, of the value of nine dollars and fifty-two cents. In awarding costs in the circumstances of this case, the chancellor was called upon to exercise discretion, to do justice between the parties. Though on the question of costs the equities are much with the defendants, yet we do not think they are such as to justify a reversal of the decree on that question alone. As each party has failed to sustain his appeal, neither will be allowed costs in this Court.

*Decree affirmed and cause remanded without costs to either party in this Court.*