ASA CUMMINGS *v.* CONNECTICUT GENERAL LIFE INSURANCE COMPANY.

February Term, 1928.

Present: WATSON. C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed May 2, 1928.

74

*Searles, Graves & Waterman* for the defendant.

*Shields & Conant* for the plaintiff.

MOULTON, J. This is an action of contract upon a policy of life insurance written by the defendant upon the life of Nellie M. Cummings. The plaintiff is the surviving husband of the insured and the beneficiary designated in the policy. The defendant conceded the execution and delivery of the policy and the death of the insured, but defended upon the grounds: (1) That the insured at the time of the medical examination for the policy fraudulently concealed the fact that she then was and had for some years before been suffering from a disease of the heart known as chronic myocarditis. (2) That she fraudulently concealed the fact that at and before her physical examination she was suffering from a chronic varicose ulcer on her right leg. (3) That after the delivery of the policy and before the payment of the first premium, until which time the policy by its terms did not take effect and become valid as a contract of insurance, the insured was suffering from double lobar pneumonia, the existence of which disease both she and the plaintiff fraudulently concealed from the defendant. The defendants paid into court the amount of the first premium received on the policy together with interest thereon and the taxable costs then accrued, and conceded its liability to pay this amount and that the plaintiff was entitled to judgment for the sum.

In October, 1925, the insured made application to the defendant for a policy of insurance and on the 12th day of that

month she underwent a physical examination by Dr. George W. Weymouth, a medical examiner of the defendants. For some reason she did not accept the insurance, but about a year later she renewed her application, and as a result the policy in suit was issued. No new medical examination was required by the defendant. The policy is dated November 5, 1926, and was delivered to the insured on the 6th day of November. The first premium was enclosed in a letter directed to an agent of the company at Randolph, Mr. Fred Preston, dated November 13, but mailed on November 15. There was some dispute as to the time of day when the premium was mailed. The plaintiff claiming that it was sometime before 11 o'clock in the morning and the defendant sometime later than that. It was received by Mr. Preston on November 16 and by him forwarded to the general agent of the company, at Montpelier, by whom the company's receipt was issued dated November 18. The policy contained this provision:

> "All premiums are due and payable in advance at the Home Office of the Company but will be accepted elsewhere if paid to a duly authorized Agent in exchange for the Company's receipt signed by the President or Secretary and countersigned by the Agent designated therein, * * * * * * * * *. . This policy shall not take effect until the first premium is actually paid as above provided during the lifetime of the insured."

Sometime between one and three o'clock of the afternoon of November 15, the plaintiff caused a physician, Dr. Munsell, to be summoned to his house because the insured was sick. He arrived about five o'clock in the afternoon of that day and found her suffering with lobar pneumonia. He attended her again late in the afternoon of the following day and found her worse. She died at about 9:45 A. M. on November 17.

The defendant did not raise the issue that the policy did not become effective during the lifetime of the insured, and so we do not consider it, although we do not overlook its importance.

The claim of fraudulent concealment with regard to the existence of myocarditis and a chronic varicose ulcer is based upon certain answers of the insured to certain questions asked in the application for the policy. The policy itself provides:

"This policy and the application therefor constitute the entire contract between the parties and all statements made in the application shall, in the absence of fraud be deemed representations and not warranties. No statement shall be used in defense to a claim under this policy unless it is contained in the written application and a copy of the application is attached to this policy when issued."

A copy of the application was attached to the policy, a part of it being that subscribed by the insured in her application of October 12, 1925, and a part being that of October 27, 1926.

The material questions and answers contained in the application are:

"Have you ever had * * * * * * palpitation, disease of the heart, or fainting spells? No. Have you ever had any local or general disease not already mentioned or any injury? No."

The foregoing appears in the application of October 12, 1925. In the subsequent application is the following:

"Are you now affected by any disease or infirmity or any deformity? No."

■ The first exception briefed is to the exclusion of a question put to Dr. Leon B. Allen, the physician called as a witness by the defendant. He was asked on direct examination, "Whether or not she (the insured) ever asked you for heart medicine?" On objection being made the question was excluded as the case then stood unless the defendant should first establish that the insured had a disease of the heart. Defendants' counsel then said, "Well, if the court please, this would be evidence I should think that the woman herself knew about it." And an exception was taken. It is now claimed that the exclusion was error because the offered evidence was an admission by the insured that she had the disease. The plaintiff says that no offer was made as to what the expected testimony would be. But it is not necessary to consider this point in this connection, because the ground now relied upon as showing error was not presented to the trial court. *Capital Garage Co. v. Powell et al.,* 97 Vt. 204, 210, 211, 122 Atl. 423; *Grapes* v. *Willoughby,* 93 Vt. 458, 461, 108 Atl. 421; *State* v. *Williams,* 94 Vt. 423, 443, 111

Atl. 701; *McAllister* v. *Benjamin,* 96 Vt. 475, 490, 121 Atl. 263; *Prouty* v. *Pellett et al.,* 96 Vt. 53, 58, 117 Atl. 373. The ground there stated was that the evidence would tend to show knowledge of her condition by the insured. And so no error appears.

■ ■ The defendant then offered to show by Dr. Allen that Mrs. Cummings, and members of her family for her, had procured heart tablets from him in quantities of 100 one-fortieth grain tablets at a time, for a long period of years, and that such medicine was a heart remedy and was asked for as such by Mrs. Cummings, and the plaintiff, her husband. The court excluded the offered evidence, as the case then stood, so far as it included admissions by the insured, and the defendant excepted.

This exception may profitably be considered in connection with the one next following it.

Later in the direct examination Dr. Allen was asked, "Did Mrs. Nellie Cummings ever complain to you about trouble with her heart?" This question was excluded "as the case now stands." The plaintiff says that this exception ought not to be considered because no offer was made as to what testimony the witness was expected to give, if permitted to answer (*Smith* v. *Reynolds,* 94 Vt. 28, 40, 108 Atl. 697; *State* v. *Noakes,* 70 Vt. 247, 256, 40 Atl. 249; *Fuller* v. *Valiquette,* 70 Vt. 502, 503, 41 Atl. 579, and cases cited), but the transcript shows that it was sufficiently indicated that an affirmative answer was anticipated. *Adams* v. *Janes,* 83 Vt. 334, 338, 75 Atl. 799. Again, the plaintiff argues that since the question was excluded "as the case now stands," it was the duty of counsel again to offer it, and, not having done so, the exception must be treated to have been waived. *Dubois* v. *Roby,* 84 Vt. 465, 472, 80 Atl. 150. But the court thus ruled upon the offered evidence as tending to show the knowledge of the insured as to her condition, and at the same time ruled that the existence of the disease could not be proved by the admission of the insured as against the plaintiff. Since the evidence was offered for the latter purpose, and the exclusion was so far unconditional, the doctrine of *Dubois* v. *Roby,* *supra,* does not apply, and the question of its admissibility is for consideration.

■ By the terms of the policy the right to change the beneficiary was reserved to the insured. This being so, the beneficiary had no vested right therein, there being no facts or circumstances tending to establish an equitable interest in the pro-

ceeds of the policy. *Spaulding* v. *Mutual Life Insurance Co.*, 94 Vt. 42, 49, 109 Atl. 22; *Modern Woodmen of America* v. *Headle*, 88 Vt. 37, 46, 90 Atl. 893, L. R. A. 1915A, 580. All the beneficiary had during the lifetime of the insured was a mere expectancy. *McManus* v. *Peerless Casualty Co.*, 114 Me. 98, 95 Atl. 510, 511; *Marsh* v. *American Legion of Honor*, 149 Mass. 512, 515, 21 N. E. 1070, 4 L. R. A. 382; *Langdeau* v. *John Hancock Mutual Life Insurance Co.*, 194 Mass. 56, 66, 80 N. E. 452, 18 L. R. A. (N. S.) 1190.

While it is said in *Fitzgerald* v. *Metropolitan Life Insurance Co.*, 90 Vt. 291, 304, 98 Atl. 498, that the authorities are not agreed as to the admissibility of evidence of the admissions or declarations of the insured when the insurance is not for the benefit of the insured, it is clearly pointed out by the late Mr. Justice Taylor in *Spaulding* v. *Mutual Life Insurance Co.*, *supra*, that the general rule of exclusion is based upon the assumption that the beneficiary has a vested interest in the policy from the time of issue. This reason does not apply where, as in this case, the interest of the beneficiary was not vested but ambulatory and an expectancy only. See cases above cited. Mr. Justice Taylor says:

"It would seem that the view that the insured's declaration was admissible against the beneficiary under a policy reserving the right to change the beneficiary, is logically correct. The insured is the party with whom the contract is made, and he remains so until his death. Consequently up to that time he is the only party in interest * * * * * * * It is merely the application of the general rule that declarations of deceased persons against their interest or right are admissible against those who claim in their interest or right."

So it is that this doctrine, although not universally accepted, has been adopted in this jurisdiction. Mr. Wigmore (Wigmore on Evidence [2nd ed.] par. 266) says that in actions on life insurance policies, where the deceased's representations as to his health are in issue, his statements as to a prior illness would be inadmissible under the hearsay exception to prove that illness and might also not be receivable as a party's admissions; and yet if the fact of the illness were otherwise evidenced, the deceased's statement might be receivable as circumstantial evi-

dence as to his knowledge of it. The learned author later says (paragraph 1018): "In a beneficiary action for the sum conditioned in the policy of life insurance, there is no legal identity of title between the deceased and the beneficiary, although the beneficiary's right is after all no more than a creation of the insurance contract."

But he adds: "It must be conceded, however, that the situation admits of much refinement of reasoning, dependent upon the theory of contract," and cites, among other cases, *Spaulding* v. *Mutual Life Insurance Co., supra.* The language of Justice Taylor to which reference has been made clearly indicates the reason for the rule to be followed.

We hold that the evidence offered for the purpose indicated was erroneously excluded, and these two exceptions are sustained.

▇▇▇▇ Dr. Munsell, who, as we have seen, attended Mrs. Cummings during her last illness, was asked by defendant's counsel on direct examination with reference to his first visit to the patient, as follows:

> "Did you talk with Mrs. Cummings, the patient, about her condition in the presence of her husband? I did. What did she tell you about her condition and as to how long she had been sick in his (the plaintiff's) presence?"

The court allowed this question only as showing knowledge of her condition. Defendant's counsel then said:

> "Well, if the Court please, in the presence of her husband, I don't think should be so limited."

and excepted to the ruling. The answer was:

> "Well, she told me she had been sick two or three days."

The ground of error briefed is that this answer in the presence of the plaintiff would constitute an admission by him of the fact therein stated; but this ground, as to the soundness of which we say nothing, was not stated below. It is incumbent upon the excepting party to cause it to appear that the exception was sufficiently explicit to apprise the trial court of the real point of it. *Kimball* v. *Insurance Company,* 98 Vt. 192, 207,

126 Atl. 553; *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 148, 130 Atl. 758; *Higgins, Admr.* v. *Metzger*, 101 Vt. 285, 143 Atl. 394, 399.

This the defendant has not done and the exception is unavailing.

Dr. Munsell was also asked on direct examination:

"Did you have any conversation with Mr. Cummings about her (the insured's) heart and heart medicine?"

The question was excluded and the defendant excepted. We take no time in the consideration of this exception, because, here again, no offer was made as to what the answer would be, and for this reason the exception is unavailing. The same witness was asked:

"Now will you tell what Mr. Cummings said to you in reply to the question which you asked him which you have just told about with regards to what these tablets were and what they had been used for and what had been done with them?"

The question was allowed, but was limited in its application to the knowledge of the insured's condition. The defendant offered it as tending to show that she had trouble and took medicine for it, and as an admission by his conduct on the part of the plaintiff, and excepted to its exclusion for that purpose. The witness answered:

"Said they were for her heart."

As before there was no offer of what the expected testimony would be. But if we assume that the court anticipated the purport of the answer and so ruled understandingly (*Gomez* v. *Hartwell*, 97 Vt. 147, 152, 122 Atl. 461), the error, if any, was harmless, because the plaintiff himself, without objection, later testified that he asked the doctor at his wife's request, whether he might give her some of Dr. Allen's heart tablets. The defendant then had the substantial benefit of the excluded testimony. *Ide* v. *Boston & Maine R. R. Co.*, 83 Vt. 66, 95, 74 Atl. 401; *State* v. *Pierce*, 88 Vt. 277, 278, 92 Atl. 218.

Dr. Munsell was also asked on direct examination:

"Did she (the insured), say anything else about her heart?"

The question was allowed as bearing upon the knowledge of the insured as to her condition, but not as evidence tending to show that she was actually suffering from the disease. It was offered as evidence tending to show her condition, and also for the purpose of showing the extent of her illness as known to her and to the plaintiff, and as bearing upon her knowledge and her husband's knowledge of her chronic condition, which had existed. with respect to her heart and which must have existed continuously up to the time of her death. An exception was taken by the defendant to the exclusion of the evidence for the purposes specified in the offer and the answer was:

"She said she had had a heart trouble, previous to this and had been taking medicine for it."

No offer was made as to what the expected testimony would be, and for this reason, and for other defects in the offer, the plaintiff says that the exception is unavailing. This may be so. But it is unnecessary to decide the question, which is not likely to arise upon a subsequent trial, because of the disposition to be made of this case, in view of our holding as to the admissibility of evidence of this character for the purpose indicated.

Fred Preston, the agent of the defendant company who received the first premium sent on behalf of Mrs. Cummings, was called as a witness by the defendant. He testified that he was not a general agent of the company, but that he received the first quarterly premium and identified the letter and envelope in which it was enclosed, and that he indorsed the post office money order representing the premium and forwarded it to the general agent of the company in Montpelier. On cross-examination, he was asked:

"Did you do something after you received this money with reference to receipting for it? I did. What did you do?"

Objection was made on the ground that this was not cross-examination because it was not with relation to anything asked upon direct examination. The question was allowed subject to exception and the witness answered:

"I filled in a temporary receipt that always goes with the policy."

With regard to this exception it is enough to say that the scope and extent of the cross-examination rests largely in the discretion of the trial court, and that an abuse of discretion does not appear. *Smith* v. *Reynolds,* 94 Vt. 28, 37, 108 Atl. 697; *State* v. *Meehan,* 86 Vt. 246, 249, 84 Atl. 862; *Miller* v. *Pearce,* 86 Vt. 322, 324, 85 Atl. 620, 43 L. R. A. (N. S.) 332.

At the close of all the evidence, the defendant moved for a directed verdict in its favor, and excepted to the refusal of the court to grant the motion. The plaintiff says that this motion could not have been granted under any circumstances because the defendant had conceded that the plaintiff was entitled to judgment for the amount of the first premium with costs accrued up to the time the same was paid into court. However, if the defense set up in the plea were made good, the verdict should have been for the plaintiff for that amount only and the defendant would have been entitled to its costs subsequent to the time of the payment into court. So for present purposes we construe the motion to be for such verdict as the defendant would be entitled to have under the circumstances.

Several of the grounds alleged in this motion are too general for consideration, in that they do not point out precisely on what basis they are predicated. *Castonguay* v. *Grand Trunk R. R. Co.,* 91 Vt. 371, 375, 100 Atl. 908, and cases cited. Other grounds are sufficiently explicit to require attention.

In dealing with a motion for a directed verdict we are concerned with the tendency of the evidence, not with its weight. *Higgins, Admr.* v. *Metzger,* 101 Vt. 285, 143 Atl. 394; *McAndrews* v. *Leonard,* 99 Vt. 512, 523, 285, Atl. 710. The evidence must be taken in the light most favorable for the plaintiff, and the action of the trial court will be sustained if the evidence fairly and reasonably tends to support the verdict. *MacDonald* v. *Orton,* 99 Vt. 425, 427, 134 Atl. 590; *Robey* v. *Boston & Maine R. R. Co.,* 91 Vt. 386, 388, 100 Atl. 925. The burden of proving the fraud and concealment alleged in the answer was upon the defendant, this being an affirmative defense. *Colston* v. *Bean,* 78 Vt. 283, 285, 62 Atl. 1015.

The first ground of the motion to be considered is that the insured at the time of her application for insurance fraudulently concealed from the defendant the fact that she was a sufferer from heart trouble. But the report of Dr. Weymouth, the defendant's examining physician, admitted in evi-

dence, showed that in October, 1925, her pulse rate was 72, her pulse was not irregular or intermittent, the apex beat normal in position and clarity, and the heart sounds and rhythm regular and normal. The examination was by stethoscope against the bared skin, and no indication was found of any disease, past or present, not specifically named in the application. In addition to this, the plaintiff and other members of the family of the insured testified to her apparent good health, her habits, and the amount of work which she was accustomed to do, up to the time of the second application of October 1926.

The defendant says that the most that can be claimed for the report of Dr. Weymouth is that the insured appeared to be in good health, and showed no heart irregularity, and cited *Spaulding* v. *Mutual Life Insurance Co.*, 94 Vt. 42, 46, 109 Atl. 22, in support of this contention. But in that case, the trouble with the insured could be detected only through the subjective symptoms, the statements of the insured as to his past and present condition, and for this reason it was held that the examiner's report showed only that there was an appearance of good health. In the instant case, the report was based upon an examination which would disclose the objective symptoms, those obvious to the senses of the observer. Dorland, Am. Med. Dict. (5th ed.) title "Symptoms." In this respect the evidence stands differently than in the Spaulding case.

We think that there was evidence from which the jury could reasonably find that there was no fraud as to the representation concerning disease of the heart, and there was no error in overruling the motion for a directed verdict on this ground.

Another ground of the motion is that the insured, at the time of the application, fraudulently concealed the fact that she was a sufferer from a varicose ulcer. Taking this ground as it is stated, and without considering the question whether the concealment of the existence of a varicose ulcer at the time of the application would serve to avoid the contract of insurance without it further appearing that such an ulcer was a disease or illness of such a character as seriously to affect the general health and soundness of the insured, and not a mere temporary indisposition, (*Schofield's Admx.* v. *Metropolitan Ins. Co.*, 79 Vt. 161, 172, 64 Atl. 1107, 8 Ann. Cas. 1152; *Billings* v. *Metropolitan Ins Co.*, 70 Vt. 477, 482, 41 Atl. 516), it is clear that here also was a question for the jury. The evidence of the

plaintiff and others tended to show that, while the insured at one time had a varicose ulcer, it became completely and permanently cured in 1923.

 The remaining ground for the motion is that the insured at the time the premium was paid failed to disclose to the defendant that since her last application for insurance there had been a material change in her health, and failed to disclose a material fact, namely her illness, which fact it was her duty to disclose prior to the payment of the premium in the manner provided by the terms of the policy.

It is argued by the plaintiff that the issue made by the pleadings was that the insured fraudulently concealed the fact that she was suffering from double lobar pneumonia, and that the evidence introduced by the defendant tended to show lobar pneumonia only; therefore that the motion for a verdict, in this respect, goes beyond the issues in the case, in that it is based upon the alleged concealment of a disease not alleged in the answer.

It is true that Dr. Munsell testified that the left lung only was affected. But an examination of the transcript discloses that the case was tried and submitted to the jury without objection on the part of the plaintiff, upon the theory that the wilful and intentional concealment of the fact that the insured was suffering from pneumonia, that being a material change in her health and physical condition, during the time in question, would constitute a defense to the action. Cases are tried in court upon the issues joined by the parties, (*Milligan* v. *Clogston*, 100 Vt. 455, 138 Atl. 739, 741; *Powell* v. *Rockwell*, 97 Vt. 528, 530, 124 Atl. 567; *Brown* v. *Aitken*, 90 Vt. 569, 573, 99 Atl. 265), but where both parties try the case, and are content to have it submitted to the jury on a certain theory, it is futile for either to urge, in this Court, that such theory as to the law was erroneous. *Bagley* v. *Cooper*, 90 Vt. 576, 579, 99 Atl. 230; *Silsby* v. *Kinsley*, 89 Vt. 263, 269, 95 Atl. 634.

 The intentional concealment of any material change in the health of an applicant for insurance between the date of the application and the issuance of the policy will avoid the policy unless known to the insurer, and fair dealing would suggest that the insurer be informed of such change and given opportunity to decide whether it would, nevertheless, issue the policy. *Stipcich* v. *Met. Life Ins. Co.* (D. C.), 8 Fed. (2nd)

285, 286. It is said in *Equitable Life Assurance Co.* v. *McElroy*, 83 Fed. 631, 636, 28 C. C. A. 365, 371:

> "In other words, the honesty, good faith and truthfulness of the person whose life is insured form the actual foundation of the agreement of·life insurance. It is for this reason that contracts of life insurance are said to be *uberrimae fidei*, and any material misrepresentation or concealment is fatal to them * * * * * * * * * The nature of this contract, the insurance of a man's life, the perfect familiarity of the man himself with the condition of the subject-matter, his own life, the ignorance of the insurance company in regard to it, and its necessary reliance in making the contract upon his good faith, honesty and truthfulness, impose upon him the duty of disclosing to the company every fact material to the risk which comes to his knowledge at any time before the contract is finally closed. An intentional omission to discharge that duty perpetrates a plain fraud upon the company, which necessarily avoids the contract."

And in *Cable* v. *United States Life Ins. Co.*, 111 Fed. 19, 27, 49 C. C. A. 216, 224:

> "So, also, in the interval between the medical examination and the execution and delivery of the policy, a serious change in the health of the assured may have occured, of which the insurer might be, and probably would be, wholly ignorant. The insurer has therefore a right to rely upon the utmost good faith upon the part of the assured, and though the latter may not be bound to communicate, if uninquired of, all the details of his life which might affect the judgment of the insurer with respect to the assumption of the risk, he is certainly bound to disclose any impending peril to life not known to the insurer, and of which the latter cannot reasonably be said to be put upon inquiry."

Authorities to this effect might be multiplied, but the foregoing suffice.

In *Gordon* v. *Prudential Ins. Co. of America*, 231 Pa. 404, 80 Atl. 882, cited by the defendant, after delivery of the policy and before payment of the first premium the insured became ill with pneumonia, but the insurer was not notified. The

insured subsequently died of the disease. In holding that the insurer was not liable the court said, ''With the question of good faith at the time of paying the premium we have nothing to do.'' But, in that case, upon the delivery of the policy, the insured signed a receipt acknowledging that it was delivered for inspection only, and upon the understanding that it was not to be in force until the payment of the first premium and official receipt of the company delivered to the insured during the lifetime and good health of the latter. Under these circumstances, no question of good faith arose in the case. The question was merely whether the contract of insurance had become effective, and since the premium was not paid during the good health of the insured, as provided by the receipt, the policy did not become binding.

That the insured in the instant case had pneumonia is beyond question; and there can be no doubt that when she fell ill with the disease a material change in her health, and one seriously affecting the risk, had taken place.

 But, in order to be fraudulent, the failure to disclose the infirmity must be with knowledge of the applicant as to its nature. The concealment must, as we have seen be wilful and intentional. ''Concealment according to the law of insurance is a designed and intentional withholding of any fact material to the risk, which the insured ought in honesty and good faith to communicate.'' *Mascott* v. *First National Fire Ins. Co.*, 69 Vt. 116, 125, 37 Atl. 255, 258. To the same effect is *Fitzgerald* v. *Met. Life Ins. Co.*, 90 Vt. 291, 300, 98 Atl. 498. So our inquiry at this point must be whether taking the evidence in the most favorable light for the plaintiff, the jury could reasonably find that she was ignorant of her condition.

It does not appear that she was told, at any time, that she had this disease. The evidence of the plaintiff, and others of the family, was that up to noon, at least, of November 15 the insured was in her usual health; during the afternoon, after waking from a nap, her speech was not natural, which was at first supposed to be due to her sudden awakening; when the doctor came, she appeared to be all right, except for her trouble in speaking, had no apparent difficulty in breathing, gave no indication of suffering, coughed very little, and raised nothing. The doctor's testimony was opposed to this, but, as we have said, we are concerned only with the tendency, not with the weight of the plain-

tiff's evidence. The son of the insured testified that after the doctor had left on November 15, his mother told him that she had a hard cold. Dr. Munsell testified, on cross-examination, that a person might have the pneumonia germ in her system and be indisposed, perhaps having a cold or an apparent cold, and not know what ailed her for some little time.

Up to the time of the first visit of the doctor, the insured was lying in a downstairs room, fully dressed. At his suggestion, she was taken to a bedroom upstairs, and the plaintiff's evidence tended to show that she wished to walk up the stairs and not be carried. The plaintiff's evidence further tended to show that on the morning of November 16 she raised sputum, but her condition otherwise remained about the same until the evening of that day. Nothing appears in the plaintiff's case as to her condition from that time until her death, but Dr. Munsell testified that, when he made his second visit, her cough was aggravated, she had no strength to move, her pulse was more rapid and feeble, and her respirations were about the same as they were at his former visit, but were not quite as deep. Nothing appears as to her condition from that time until her death, which occurred at 9:45 the morning of the following day.

The evidence standing thus, we cannot say as a matter of law, that the insured, up to the time of her death, knew that she was suffering from pneumonia. It is said in *Fitzgerald* v. *Met. Life Ins. Co.*, 91 Vt. 291, 303, 98 Atl. 498, 504, that diseases and symptoms of diseases "are matters which pertain to the applicant personally, and yet may not be within his knowledge. He may know of certain symptoms without being aware of their significance. Some conditions which to his experience indicate a harmless temporary ailment may be the beginning of a fatal disease. The infirmities of the race are such that the man in absolutely perfect health cannot well be taken as the standard."

The question of fraudulent concealment by the plaintiff, the beneficiary under the policy, of the condition of the insured is not raised by the motion. Therefore, we do not consider it. And though it be conceded that the plaintiff was the agent of the insured in mailing the first premium, there was testimony that at that time the insured was apparently in her usual health, and that the plaintiff had no knowledge to the contrary; and there was no evidence from which we can say, as a matter of

law, that his agency thereafter continued so that his knowledge of her subsequent condition, if any, could be imputed to her.

In view of what we have said above, it is not necessary to determine the precise day upon which the first premium was paid, in accordance with the terms of the policy. There was no error in overruling the motion for a verdict.

Dr. Weymouth, the company's examining physician who examined the insured on October 12, 1925, was called as a witness by the plaintiff. He testified to making the examination and identified his report to the company, which he said was true. The report was admitted in evidence and the material part thereof was as follows:

"Does his general appearance indicate perfect health? Yes.

Pulse rate per minute? 72.

Is the pulse irregular or intermittent? No.

Give location and character of apex beat. Normal position. Normal clarity.

Are the heart sounds and rhythm regular and normal? Yes.

Was examination of heart and lungs made with stethoscope against bared skin? Yes.

Do you find any indication of any disease, past or present, not specifically named in the preceding questions? No.

In your opinion is this risk first-class, good or poor? 1st.

Do you recommend its acceptance for insurance? Yes."

With respect to this, the court instructed the jury as follows:

"The report of the examining physician, Dr. Weymouth, which has been received here in evidence, is some evidence tending to show that Mrs. Cummings at the time of that examination did not have heart disease and was otherwise in good health. It isn't conclusive but as I have said it is some evidence for your consideration on that question. The weight of it is entirely for you."

An exception to this instruction was taken in the following language:

"Defendant excepts to the charge of the court that the report of Dr. Weymouth is some evidence that Mrs. Cummings did not have heart disease and was in good health at the time of his report."

This exception did not reasonably indicate to the trial court the fault found with its ruling. We have said many times that in order to be considered a question must be brought before this Court by an appropriate exception, and no exception is appropriate that leaves the trial court in ignorance of the precise ground upon which it is predicated. *Morgan* v. *Gould*, 96 Vt. 275, 279, 119 Atl. 517; *Eastern States, etc., League* v. *Vail's Estate*, 97 Vt. 495, 514, 124 Atl. 568, 38 A. L. R. 845; *Newton* v. *American Car Sprinkler Co.*, 88 Vt. 487, 494, 92 Atl. 831; *Robinson* v. *Leonard*, 100 Vt. 1, 10, 134 Atl. 706. And so a general exception to a part of the charge which states no ground of objection is unavailing. *Barnard* v. *Leonard*, 91 Vt. 369, 371, 100 Atl. 876; *Patterson* v. *Modern Woodmen of America*, 89 Vt. 305, 95 Atl. 692; *Lynds* v. *Plymouth*, 73 Vt. 216, 221, 50 Atl. 1083; *In re Bean's Will*, 85 Vt. 452, 464, 82 Atl. 734.

With respect to the varicose ulcer the court charged the jury that the terms "disease" or "illness" as used in the application for insurance meant "a disease or illness of such a character as to seriously affect the general soundness and healthfulness of the system, and not a mere temporary indisposition which did not tend to undermine and weaken the constitution of the insured"; and that the questions to be answered were these, did the insured have such a disease, and, if so, was it a disease of such a character as to affect the general soundness and healthfulness of her system, and did it tend to undermine and weaken her constitution. The Court then said:

"If she did not have such a disease at the time of her application or either of them, or previous thereto, or if it was not of the character already indicated, that is, if it was a mere temporary indisposition, then her answers were true or substantially true and the plaintiff would be entitled to recover so far as this issue is concerned."

To the foregoing instruction, the defendant excepted as follows:

"Defendant excepts to the submitting to the jury of the question as to whether Mrs. Cummings had a varicose ulcer at the time of her application or previous thereto, because the defendant says that as a matter of law it appears that she had had such an ulcer at least previous to the time of said application."

It is true that it did appear that the insured was at one time afflicted with a varicose ulcer, but the plaintiff's evidence tended to show that it was not, as claimed by the defendant, a chronic ulcer, and that it was entirely cured some two years before the first application for insurance was made, and did not thereafter return. It was, on all the evidence, a question for the jury, whether the ulcer was a disease or illness of such a character as seriously to affect the general health and soundness of the insured, and not a mere temporary indisposition. *Schofield's Admx.* v. *Met. Life Ins. Co.*, 79 Vt. 161, 172, 64 Atl. 1107, 8 Ann. Cas. 1152; *Billings* v. *Met. Life Ins. Co.*, 70 Vt. 477, 482, 41 Atl. 516.

The instruction of which the defendant complains, taken in connection with the rest of the charge on this subject, does not merit the criticism stated in its brief, that it permitted the jury to say that Mrs. Cummings never had a varicose ulcer. The point submitted was as to the character of the infirmity, and not as to its one-time existence. This clearly appears from the language of the court immediately following the part above quoted, that if she had at the time, or had previously had, a disease of such a character as to affect the general soundness and healthfulness of her system, then her answers that she was not so affected were material to the risk, and since she must have known that they were false, they would be fraudulent misrepresentations and would bar her recovery. This exception is not sustained.

This disposes of the questions raised before us.

*Judgment reversed, and cause remanded.*