Morse & Rogers, Inc. *v.* Charles J. Spiller.

May Term, 1937.

Present: Powers, C. J., Slack, Moulton, Sherburne and Buttles, JJ.

Opinion filed October 5, 1937.

*Max L. Powell* and *Robert H. Ryan* for the plaintiff.

*Wilson, Carver, Davis & Keyser* for the defendant.

Moulton, J. This is an action in tort for deceit. The declaration alleges that the defendant, who was the treasurer of Spiller Shoes, Inc., for the purpose of obtaining credit falsely

represented to the plaintiff that Spiller Shoes, Inc., had a net worth of $13,911.33, as of March 1, 1935, that the plaintiff in reliance upon the representation, and believing it to be true, sold and delivered to Spiller Shoes, Inc., a certain amount of merchandise on credit; that Spiller Shoes, Inc., was at the time insolvent and not worthy of credit, which was well known to the defendant; that the plaintiff has not been paid, and has suffered damage. The plea was general denial. At the close of the evidence the trial court directed a verdict for the defendant, and the cause is here upon exceptions by the plaintiff.

There is no dispute as to the material facts shown by the testimony. The only questions concern the inferences to be drawn therefrom.

On March 1, 1935, Spiller Shoes, Inc., was indebted to the plaintiff in the sum of $1,253.37 for merchandise previously sold, and the plaintiff refused to ship further orders until furnished with a credit statement. On March 25, such a statement was received, signed by the defendant, as treasurer of Spiller Shoes, Inc., covering the period from July 1, 1934, to March 1, 1935, and "approximately estimated," which showed, as of March 1, assets consisting of cash on deposit, $552.96, merchandise in stock, at lower of cost or market value, $15,000, fixtures and equipment at present depreciated value, $1,635.75; and as due from Spiller Motor Sales, Inc., $1,500; in all $18,688.71. The liabilities were given as follows: Accounts payable for merchandise, $3,274.95; owing to an unnamed bank, $1,402.43; and approximate other liabilities, $100; in all, $4,777.38. The net worth was stated to be $13,911.33. In reliance upon this statement, the plaintiff delivered the merchandise to the amount of about $3,000 in different shipments between March 25 and December 23. From time to time, during this period Spiller Shoes, Inc., made payments on the old and new accounts, until the balance due was $1,700.

On January 4, 1936, Spiller Shoes, Inc., assigned its assets for the benefit of its creditors and at this time the merchandise on hand was appraised on behalf of the assignee at $5,359.99, which was a very low estimate, and made upon the basis of what the goods would bring at public auction, since the assignee wished it to be figured in anticipation of a quick turnover. It did not include certain rubbers, slippers and children's and

women's shoes. The fixtures were appraised at $323.10. The assignors' appraisal was about $9,000 which amount was arrived at by reducing much of the stock from ten cents to one dollar a pair. The actual cost of the merchandise then on hand was between $10,200 anl $10,400.

An involuntary petition in bankruptcy was filed at some unstated time after the assignment. The schedule of assets and liabilities gave accounts receivable, $7,024.04; taxes, $217.68; secured claims, $3,132.68; and unsecured claims, $10,502.02.

The operating expenses between March 1, 1935, and January 4, 1936, amounted to $9,315.59; during that period payments to merchandise creditors were made in the sum of $15,523.89; and the loan to Spiller Motors, Inc., was increased to $6,587.36. New merchandise to the amount of $20,000 was purchased.

The argument of the plaintiff runs in this way: If the net worth of Spiller Shoes, Inc., on March 1, 1935, had been $13,-911.33, then, assuming that the newly purchased merchandise had all been sold and no gross profit realized, the deduction of the operating expense of $9,315.59 would leave $4,595.74, which should have been the net worth at the time of the assignment. However, it is claimed that the evidence showed that a large gross profit was made, and that this may be demonstrated in the following manner: Taking the value of the merchandise in stock on March 1, 1935, at the figure given in the credit statement, $15,000, and adding to that the goods purchased between that date and January 4, 1936, $20,000, shows a total of $35,000. Deducting the cost price of goods on hand on the latter date, $10,400, leaves a balance of $24,600 representing the cost of the merchandise that must have been sold during the period mentioned. Since Mrs. Spiller testified that the mark up was 50 per cent. of the purchase price, the gross profit must have been $12,300 and this sum added to $4,595.44 makes $16,895.44, which, the plaintiff insists, is what the net worth should have been at the date of the assignment, if the representation of a net worth of $13,911.33 as of March 1, 1935, had been correct; but instead of this, there was a deficit of $1,145.25 when the assignment was made, thus leaving a discrepancy of $18,040.69 to be explained. The amount of the deficit is reached by adding together the assignee's appraisal of the stock in trade, $5,359.99, the appraisal of the fixtures, $323.10; and the accounts receiv-

154

able, as shown by the schedule in bankruptcy, $7,024.04; in all, $12,707.13, and subtracting this sum from the total liabilities appearing in the schedule in bankruptcy, which amounts to $13,852.38.

The trouble with this argument is twofold; it assumes too much, and it disregards certain facts appearing in the evidence without dispute.

The correctness of the plaintiff's computation depends upon the assumption that a profit, amounting to 33⅓ per cent of the sale price of the merchandise, had been realized by Spiller Shoes, Inc. But, as the defendant points out, there was no evidence tending to show what prices were obtained for the merchandise sold between March 1, 1935, and the date of the assignment. No figures were produced which indicated a profit. The testimony of Mrs. Spiller relative to the mark up of 50 per cent on the cost price referred to the eight months period prior to the giving of the credit statement, and to the goods then on hand. The uncontradicted evidence was to the effect that, in the summer or early fall, the business was much affected by competition from a rival and newly established store dealing in the same line of merchandise, and prices were reduced to meet the situation.

Furthermore, the argument that, on the theory that no gross profit was realized, there was a deficit at the time of the assignment amounting to $1,145.25, has its defects. In reaching the conclusion that, if the credit statement had been true, the net worth of Spiller Shoes, Inc., on January 4, 1936, would have been $4,595.74, the plaintiff accepts the merchandise on hand on March 1, 1935, at $15,000 on the basis of "lower of cost or market value," which may be assumed to be its approximate value, and the newly purchased merchandise is taken at cost. But in calculating the deficit, the merchandise passing to the assignee is taken at the appraisal then made, which was not even approximate, but made very low in anticipation of an auction sale, the actual cost being between $10,200 and $10,400. If the cost price or approximate cost price is used upon one side of the ledger, it ought, in fairness, to be used upon the other side. Taking the minimum cost of the stock in trade remaining on January 4, 1936 ($10,200), we have an increase in value amounting to the difference between

this sum and the appraisal of $5,359.99, which is $4,840.01, and this makes the total assets $17,547.14, instead of $12,707.13 as the plaintiff claims. Deducting the liabilities of $13,852.38 leaves a net worth of $3,694.76, to which must be added an item which the plaintiff has ignored—the sum of $1,828.85 turned over to the assignee in cash. Thus, following the line of plaintiff's argument, the net worth at the time of the assignment would appear to have been $5,523.61, or $927.87 more than he claims that it should have been if the credit statement had been true.

It must be remembered that some of the figures appearing in evidence are inexact, and, indeed, the credit statement was, according to its terms, "approximately estimated." Even so, and conceding a margin of error, the evidence fails to indicate the existence of the fraud alleged. We are concerned, of course, with the condition of Spiller Shoes, Inc., as of March 1, 1935, and not with any subsequent improvidence or mismanagement.

The burden was upon the plaintiff to establish the falsity of the claimed fraudulent representation, unaided by presumption; *Colston* v. *Bean,* 78 Vt. 283, 285, 62 Atl. 1015. To make a jury question of it, there must have been substantial evidence which, taken most favorably for the plaintiff, fairly and reasonably tended to substantiate the essential allegations of the declaration; failing this the defendant was entitled to a verdict. *Cummings* v. *Insurance Co.,* 101 Vt. 73, 85, 142 Atl. 82. Evidence of the speculative nature of that here relied upon was not sufficient to warrant the submission of the case to the jury. No error is made to appear.

*Judgment affirmed.*